James J. AZAR, Plaintiff and Respondent,

v.

Betty AZAR, Defendant and Appellant.

No. 8257.

Supreme Court of North Dakota.

Nov. 4, 1966.

Zuger, Zuger & Bucklin, Bismarck, for plaintiff and respondent.

Higgins & Christensen, Bismarck, for defendant and appellant.

TEIGEN, Chief Justice (on reassignment).

This is an appeal from the judgment in a divorce action triable de novo in this Court.

In this case the plaintiff-husband and the defendant-wife each brought an action for divorce on the same day. The husband's complaint was served first, and it was stipulated that the complaint of the wife was to stand as a counterclaim to the husband's complaint. Each party alleged extreme cruelty as a ground for divorce, and each party denied the allegation of cruelty contained in the other's complaint.

This is the second action for divorce by these parties. The first action was brought by the wife. as plaintiff. The husband counterclaimed. Each asked for a divorce

and custody of the children, alleging extreme cruelty on the part of the other. The first case was tried piecemeal over a period of some 15 months. Judgment was entered August 12, 1959, granting a divorce to the husband, and awarding custody of their two children to an aunt. The wife appealed from the judgment. This Court, on November 27, 1961, held that both parties had established extreme cruelty on the part of the other, and the fact that one party might have been more culpable than the other did not alter the rule that divorce must not be granted where recrimination is established. We reversed judgment granting a divorce, and remanded to the district court with directions to enter a judgment denying a divorce and to hold additional hearings for the purpose of reviewing the questions of custody and allowances in the light of the evidence in the case and the circumstances of the parties at the time of remittitur. Azar v. Azar, N.D., 112 N.W.2d 1. The parties had been separated for four years prior to and during the litigation in that case. However, in the first part of December 1961, the parties reconciled and resumed living together as husband and wife. This continued until June 2, 1964, when the present actions were commenced.

In the present action, after a long trial, the trial court awarded judgment of divorce in favor of the plaintiff-husband on the ground of extreme cruelty. It dismissed the defendant-wife's counterclaim for divorce on the merits with prejudice, and awarded custody of the two minor children to the plaintiff-husband with certain visitation rights granted to the defendant-wife, and provided that she have the temporary custody of the children for a period not to exceed two weeks during the three-month summer vacation period each year, on certain conditions, during which time the plaintiff-husband would pay her $100 per week support money. The defendant-wife was awarded her personal belongings, and was directed to remove them and herself from the home occupied by the parties. The remainder of the property, both real and personal, was awarded to the plaintiff-husband. The judgment further provided that the plaintiff-husband should pay to the defendant-wife the sum of $3,000 for her equitable share in all of the community property, and awarded certain attorney fees and costs in favor of the defendant-wife.

■ Since the rendition of our first decision (Azar v. Azar, supra,) Section 14–05–15, N.D.C.C., defining recrimination, was repealed by the legislature, and Section 14–05–10, N.D.C.C., which provided that recrimination is a complete defense in an action for divorce, was amended to eliminate therefrom the defense of recrimination. Chapter 127, Session Laws of 1963. It became effective July 1, 1963. This action was commenced on June 2, 1964. The statutory defense of recrimination was no longer available.

We have reviewed all of the evidence submitted in this case pertaining to the conduct of each of the parties toward the other subsequent to July 1, 1963. We find each of the parties has testified to acts and conduct of the other that ordinarily can be said to constitute extreme cruelty and a ground for divorce. This cruelty was both physical and mental, and appears grievous in character. In view of the position taken by each of these parties it is apparent the legitimate objects of marriage have been destroyed. We conclude the interests of the parties, their children, and the public will be best served by granting a divorce to either or both of the parties.

The trial court found that the defendant-wife's attitude and conduct toward the plaintiff-husband were much more serious and substantial than that of the plaintiff. For this reason the trial court granted a divorce to the plaintiff-husband and denied divorce to the defendant-wife.

■ Whether the acts of one party have inflicted grievous mental or physical suffering upon the other is a question of fact to be determined from all of the circumstances of the case. Facts may justify in-

ferences of suffering, but whether they caused grievous mental or physical suffering is another question. Extreme cruelty as a ground for divorce is an infliction of grievous bodily injury or grievous mental suffering. Section 14-05-05, N.D.C.C. Swanson v. Swanson, 75 N.D. 332, 28 N.W.2d 73.

■ We have before us a record of sharply conflicting testimony. There are charges and denials, countercharges and denials, with scarcely any corroboration. The questions in issue are of fact in the first instance, with credibility the determining factor. We believe neither party is without fault, but it is difficult from the cold record to say that one was more to blame than the other. Many of the same problems existed after the reconciliation that existed prior to the first trial as reported in the former decision of this Court. The actions of both parties demonstrate emotional instability. Both parties had further psychiatric evaluations and some treatment. The evidence further illustrates the accuracy of the psychiatric evaluations made and reported in the first case. Clearly, the expert opinion has been proved correct. It was as follows:

We believe it is fair to say that, if they remain together, no amount of treatment will enable them to enjoy a relatively peaceful married life, and it is also believed that if they are separated they will continue their contacts and continue their conflict.

Though the case is triable anew in this Court, it is impossible to determine the amount of credence to which the testimony of each witness is entitled on the many disputed questions of fact. We have held that in cases of this kind, although being triable de novo here, that in the presence of a conflict in the testimony we are disposed to give serious consideration to the decision of the trial court (Gray v. Gray, 31 N.D. 618, 154 N.W. 530), and in determining

whether or not the evidence establishes that the acts of a party inflicted grievous mental suffering upon the other, the findings of the trial court are entitled to appreciable weight. Swanson v. Swanson, supra; Raszler v. Raszler, N.D., 64 N.W.2d 358; Slade v. Slade, N.D., 122 N.W.2d 160. This Court, in Mahnken v. Mahnken, 9 N.D. 188, p. 191, 82 N.W. 870, p. 872, in regard to whether grievous mental suffering has been inflicted, stated:

But it is very evident that courts here tread upon delicate, and perhaps uncertain, grounds. The differences in mental characteristics are as varied as the differences in facial expression. The effect upon two minds of the same act or language may be entirely different, and the effect upon one may be incomprehensible to the other. It is clear, then, that no standard can be erected, no measurements given, and no criterion established by which to gauge mental suffering.

We find that in no other litigation is the personal presence of the parties in court more important, or the weight and value of the circumstances more vital, than in a divorce proceeding. The trial court in divorce cases where the evidence is conflicting necessarily exercises its judicial discretion to a large extent, and it should not be disturbed on appeal unless such discretion has been clearly abused. 27A C.J.S. Divorce § 194(5). For these reasons we accept the trial court's findings on the question of divorce.

■ The next question pertains to the custody of the children of the marriage. When a divorce is granted, the trial court has continuing jurisdiction with reference to the custody, care, education and welfare of the minor children of the marriage. Section 14-05-22, N.D.C.C.; Bryant v. Bryant, N.D., 102 N.W.2d 800; Eisenbarth v. Eisenbarth, N.D., 91 N.W.2d 186; Olson v. Olson, 77 N.D. 444, 43 N.W.2d 689. In

the matter of awarding custody of children in a divorce action, a large discretion is vested in the trial court and its decision will ordinarily be interfered with only where there is an abuse of that discretion. Henry v. Henry, 77 N.D. 845, 46 N.W.2d 701; Sjol v. Sjol, 76 N.D. 336, 35 N.W.2d 797. The judgment of the trial court awarded custody to the father, with certain visitation privileges granted the wife. It granted the wife temporary custody for a two-week period during the summer vacation from school, during which time the husband was to pay her $100 per week as support money. There are two children, both girls. They are Jana Jo, born September 12, 1955, and now 11 years of age, and April, born April 10, 1957, now about 9½ years of age. In the first action, the trial court awarded their custody to the husband's sister, Angeline Azar, and it appears that during the four years that the parties lived separate and apart after the commencement of that action, the children were well cared for and received education and moral and religious training. When the parties reconciled in December 1961, the children again became a part of the family, and this continued until the present action was commenced on June 2, 1964, a period of about two and one-half years. Since this action was commenced the children have lived with their mother. Although the judgment in the action awarded custody to the father, upon proceedings had the court entered an order staying execution of the judgment pending this decision on appeal. In its order entered December 3, 1964, the court directed that the father, commencing January 1, 1965, and continuing during the pendency of the appeal, should pay to the wife the sum of $50 per month for each of the two children as support for them, and that the defendant-wife, with the said children, be permitted to occupy the home of the parties located at 825 North Fourth Street in the City of Bismarck upon the defendant-wife filing an undertaking providing that the award of $3,000 made in her favor in settlement of the community property should be pledged by her to secure her payment of all damages that might be assessed against her in the action, and the costs thereof. It therefore appears that the two daughters have been living with their mother since this action was commenced on June 2, 1964. After the parties had reconciled in December of 1961, they lived together in the husband's motel in Bismarck. About three weeks after the reconciliation, they took a second honeymoon, taking their children with them. They traveled for about a month, stopping temporarily at Billings, Montana; Reno, Nevada; Lake Tahoe and San Francisco, California; and Seattle, Washington. This was a rather expensive trip, costing about $4,500. They returned to Bismarck and again lived in the motel until November 12, 1962, when a manager for the motel was hired. The parties, with their children, then went to Minneapolis, Minnesota, for a visit with the wife's mother and sister, after which they went to Las Vegas, Nevada, for a short period, and later to Los Angeles, California, where they arrived some time in December of 1962. They rented an apartment in Inglewood, California, a suburb of Los Angeles. The children were placed in school. It appears it was the intent of the parties that the wife should attend an electrolysis school and the husband was to obtain work. However, the wife did not attend an electrolysis school nor did the husband succeed in obtaining work. They remained there approximately two months and were running short of funds. They then went to Lake Tahoe, California, and stayed for a short time with her old school friend. Later they rented a house and placed the children in school at Lake Tahoe. It appears that while they were at this location serious arguments started; that the husband was still a compulsive gambler, spending a good part of his time gambling, and that the wife also did some gambling. Neither of them obtained work of any consequence. Considerable money had been spent, and also lost in gambling, and they were short of money to meet expenses.

There was a large mortgage on the motel, and while at Lake Tahoe the parties received notice that such mortgage was about to be foreclosed. They returned to Bismarck, North Dakota. While at Lake Tahoe the domestic trouble had grown to such magnitude that the parties voluntarily submitted to psychiatric treatment at the state mental hospital at Auburn, California, for a short time, and each consulted a psychiatrist after returning to Bismarck. About 15 days after their return to Bismarck, the motel was sold for the sum of $105,000. $15,000 was paid down in cash, which was received by the parties to this action. The purchasers conveyed a cottage on Strawberry Lake at the agreed value of $5,000, which was also applied as a down payment. This cottage was conveyed to the realtor who handled the transaction as his commission. The balance of $85,000 was to be paid off at the rate of $957.40 per month, inclusive of taxes and insurance, for a period of 15 years. The contract provided for monthly payments of $620, to be made to the First Federal Savings and Loan Association of Bismarck, who held a first mortgage against the property, and the balance of the payment, $337.40 monthly, to be made to the Azars. Both payments were to commence September 1, 1963. Shortly thereafter the parties purchased the home in which the defendant-wife is now residing. They paid $3,000 as a down payment. They moved into the home, but the domestic troubles continued. After selling and giving possession of the motel, and before moving into the home which they purchased, the parties lived with the plaintiff-husband's mother for a short time. The purchasers of the motel defaulted in the payments, and a foreclosure action was commenced which was tried in March 1964. At that time the defendant-wife was working as a secretary for a local attorney who handled the foreclosure. The plaintiff-husband was dissatisfied with the handling of the foreclosure and further arguments resulted which also involved the attorney. These troubles culminated in an application being made by the attorney to the county court to have the plaintiff-husband involuntarily committed to the State Hospital. A hearing was held and the proceeding dismissed by the county board of mental health. The following day separate actions for divorce were filed by the respective parties hereto.

The memorandum opinion of the trial judge discloses that in awarding custody of the children he considered that they should be permitted to remain together in one home; that the home which the plaintiff purchased is reasonably well furnished; that they should have a right to live in their father's home and enjoy the conveniences and comforts thereof; that they should have the right and privilege to continue in the school they have attended, and continue to enjoy the friendships and associations which they have made. The court found that it was to the children's best interests and welfare that their custody be awarded to the father and the members of his family who are attached to them, love them, and have taken good care of them while their father is working. The court also found that both parties will have to seek gainful employment to earn a decent livelihood, which will require that both of the parties will have to be away from their children between eight and nine hours daily except Sundays and holidays, depending upon the nature of their future employment, and indicates that if custody should be placed with the defendant-wife, the children will be cared for by strangers eight or nine hours a day while she works. The trial court acknowledged that it had continuing jurisdiction of the custody of the children of the marriage; that it has the authority to vacate or modify the order awarding custody whenever necessary, proper, or when the best interest and welfare of the children may so require. The court in its memorandum also indicated that the children in a few years will be mature and intelligent enough to express a wise and reasonable preference which the court would respect and honor if it determined that the change

of custody would serve their best interest and welfare. The trial court found that the interest and welfare of the children will be best served by awarding their custody to their father, subject to the conditions heretofore outlined. The court found that there would be no money or income from the sale of the motel or the foreclosure of the contract for deed thereon, as in the foreclosure action the purchasers were to remain in possession until December 31, 1964, during which time they had the privilege of reinstating their contract by paying the amount due as of that date.

The record, as we have heretofore stated, is replete with evidence indicating bad conduct of each of the parties to the other. However, there is no evidence to indicate that either of the parties would not be a good parent to the children. It appears that both of the parties love their children and will do everything reasonably necessary to provide for their welfare, education, religious training, and will attempt in every way to make proper provision for their care, nurture and comfort. Although the children were often present during the domestic quarrels and storms, neither of the parties called them as witnesses to corroborate their claims. Each of the parties wanted to protect the children from witnessing against the other party. Neither party claimed the other did not love the children, nor that the other party was not a good parent.

The children have now resided with the mother under the stay order of the trial court for a period of approximately two years, and there may have been substantial changes in the circumstances of the parties since the entry of the judgment herein. For this reason we are of the opinion that the question of custody and allowances should now be reviewed by the district court, not only in the light of the evidence in this case, but also in the light of the present circumstances of the parties and of the children.

The evidence with respect to the property of the parties does not appear to be in dispute. The trial court, after careful consideration, determined that there was an equity of redemption in the motel of the approximate value of $45,000; that the first mortgage against this property has been foreclosed, and that the period of redemption would expire June 1, 1965; that the residence located at 825 North Fourth Street in Bismarck was purchased on contract, and that there was an equity therein of about $6,000; that the household goods, furniture, furnishings, appliances and supplies are of the approximate value of $5,000. It is undisputed that the plaintiff-husband owned the motel before the marriage of the parties, although it was subject to a substantial mortgage. The mortgage has not been paid and was eventually foreclosed. At the time of trial, however, the period of redemption had not expired. It is not claimed that the defendant-wife brought any property into the marriage, nor is it contended that the net worth of the parties increased during the marriage relationship. It is claimed that since the reconciliation, the plaintiff-husband lost about $5,000 in gambling between May and October 1962; that notwithstanding such loss, the parties stopped at Las Vegas on the way to California, where both gambled, she in small stakes, and that he lost $2,500. However, these losses did not discourage or deter the defendant-wife, because she admitted that she persuaded plaintiff to leave Inglewood and go to Lake Tahoe to enable him to obtain employment in a casino because he knew the gambling business. While there plaintiff lost approximately $5,000 more, and the trial court found "the defendant having assented to and encouraged plaintiff's gambling cannot seriously claim that she was injured thereby." The court made a careful analysis to determine an equitable division of the community property and found that the defendant-wife, sharing in proportion to her contribution to the acquisition and maintenance of the property during the married life, should be entitled to an allowance or an award in the

sum of $3,000 cash. When a divorce is granted the court is required to make such equitable distribution of the real and personal property of the parties as may seem just and proper. Section 14-05-24, N.D. C.C. The distribution depends upon the facts and circumstances of each particular case. Fischer v. Fischer, N.D., 139 N.W.2d 845; Nicholson v. Nicholson, N.D., 126 N. W.2d 904; Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697. There is no rigid rule for the division of property; the ultimate object is an equitable distribution. Nicholson v. Nicholson, supra. We have carefully examined the evidence and agree the trial court has made a fair and equitable division of the property, and it is neither shown nor seriously contended that the division is unfair or inequitable under the facts and circumstances of this case. The trial court allowed defendant-wife her attorney fees and costs of the trial. Examination of the record impresses us that the trial court was fair and considerate of the equities in making this property division.

 On the basis of our review of the entire case we determine that the judgment awarding divorce and the division of property be affirmed. However, for reasons heretofore set forth, we reverse the order of the trial court granting custody of the two minor children to the plaintiff-husband, and direct that the trial court modify its decree to provide that custody of the said minor children shall be in the mother until the further order of the court. We deem it for the best interests of the children, who have been in the custody of their mother since the commencement of this action on June 2, 1964, a period of almost two and one-half years, that this arrangement be not changed until the trial court has had opportunity to fully consider again their best interests in the light of present circumstances. Those rights are paramount to the rights of the parents to custody, the interest of the parents being important only to the extent that their interests bear on the question of what is best for the children. We also direct that the judgment on remittitur now provide that the plaintiff shall pay to the defendant the sum of $50 per month per child as and for their support, and that the defendant shall continue to have the use and occupancy of the home of the parties located at 825 North Fourth Street, Bismarck, free of rent or other costs except heat and utilities. We further direct that the father shall have the right to visit his children during reasonable hours on Saturdays, Sundays and legal holidays for reasonable periods of time, but that in so doing he shall not interfere with or molest the defendant. We direct that the trial court shall have the authority to vacate or modify the order awarding custody and support whenever necessary or proper when the best interests and welfare of the children may so require, and for such purposes shall have continuing jurisdiction as provided by Section 14-05-22, N.D.C.C.

The judgment is modified, and as modified it is affirmed.

KNUDSON, J., and EUGENE A. BURDICK, Dist. Judge, concur.

I concur in the result. RALPH J. ERICKSTAD.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

STRUTZ, J., deeming himself disqualified did not participate, Honorable EUGENE A. BURDICK, Judge of the Fifth Judicial District, sitting in his stead.