Shirley M. GOFF, Plaintiff and Respondent,

v.

George W. GOFF, Jr., Defendant and Appellant.

Civ. No. 8876.

Supreme Court of North Dakota.

Oct. 23, 1973.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellant.

Robert A. Alphson, Grand Forks, for plaintiff and respondent.

TEIGEN, Judge.

The defendant, George W. Goff, Jr. (hereinafter father), has appealed from an order of the district court modifying a decree of divorce entered on January 7, 1970, in respect to custody of a minor child, Sherie Lynn Goff (hereinafter Sherie). By the decree the father was awarded the absolute care, custody and control of Sherie, subject to certain visitation rights by the mother, Shirley M. Goff (hereinafter mother), and the mother was awarded the absolute care, custody and control of a younger minor child, Teresa Ann Parrish, subject to visitation rights by the father. The divorce decree prohibited either party from remarrying for a period of thirty days. Upon expiration of the thirty-day period, the mother remarried and her name is now Shirley M. Parrish.

The trial court's order from which this appeal is taken orders and directs that the custody of Sherie be changed from the father to the mother, allowing certain visitation privileges to the father and, also, to the paternal grandparents, and directs that the judgment be amended accordingly.

Sherie was born on April 19, 1967. At the time of the hearing in September and October 1972, she was about five years, five months of age. The father and Sherie, subsequent to the divorce, lived with his parents, Sherie's paternal grandparents. This arrangement continued until February 1972 when Sherie's father left the paternal home in Valley City and went to Thunder Bay, Canada, where he was employed in construction work until May 1972. Following that employment he went to Minneapolis where he obtained employment as a parts man for Anderson Dodge. He was still employed there at the time of the trial.

The father has blackout spells which he testified were caused by an artery leading to the brain which, for some reason, on occasion, restricts the flow of blood, to the extent that he has fainting or blackout periods. He testified that he has been hospitalized for this malady. Subsequent to suffering one of these blackout spells while employed at Anderson Dodge, he was taken to a hospital in Minneapolis where the problem was diagnosed. He is presently receiving treatments which his doctors hope will cure the malfunction. He has been advised that if the treatments by medication do not remedy the situation surgery will be performed for the purpose of replacing a portion of the artery with a plastic tube through which the blood will flow to the brain. Although he has been suffering from these blackout spells for a number of years, the cause was not diagnosed until July 1972.

According to the testimony of the father he was also planning to be married, perhaps sometime in November or December of 1972. In the meantime he has been living in a single room in a small hotel near downtown Minneapolis, which is not suitable as living quarters for Sherie. He testified that his fiancee, who is a registered nurse, is well acquainted with Sherie as

she has visited with her on a number of occasions. Both the father and his fiancee are desirous of taking Sherie into their home after they are married, which will be an adequate and proper home for her. He testified that he expects that his employment as a parts man at Anderson Dodge will be a continuing employment and is one which he desires to pursue.

Sherie's mother, subsequent to the divorce in January 1972, remained in Valley City until the thirty-day remarriage prohibitory period had expired. She was then married to Nolan Parrish, her present husband. Upon their marriage they left North Dakota and went to Seattle, Washington, where he was employed by the Boeing Company. They remained in the state of Washington, apparently making no trips back to North Dakota, until about May 1972, when they returned to North Dakota. At the time of the trial they were living in a farm home near Hatton, North Dakota, which is owned by Mrs. Parrish's parents. There have been no children born as issue of this marriage.

Mr. Parrish testified that he is employed as an electronics technician and is trained to do work on copy machines for the B M Department at Gaffney's Office Supply. We assume from the record that this place of business is located in Grand Forks, North Dakota, approximately forty miles distant from Hatton, although the record does not establish this as a fact. Mr. Parrish testified that his earnings are approximately $500 per month, and that they have a good home. He also is desirous of having Sherie become a part of the family.

From January 1970, when the divorce was granted, to May 1972, neither the father nor the mother had visited with the child while she was in the custody of the other. The mother, at the time of this trial, was twenty-three years of age and her husband, Mr. Parrish, was twenty-seven years of age. The father apparently was approximately twenty-eight or twenty-nine years of age, and his fiancee prob-

ably about twenty-six years of age. On these matters the record is not clear.

Subsequent to the return of the mother to the state of North Dakota in May 1972, the paternal grandmother and Sherie spent considerable time in Canada and the Minneapolis area. The paternal grandmother and the father contend that the purpose of such visits was to allow the father to spend time with his daughter Sherie, whereas it is the contention of the mother that Sherie was taken out of the Valley City community to prevent the mother from exercising her visitation rights under the divorce decree. In addition, a number of charges and countercharges were made by each of the parties hereto of claimed unfitness of the other to have the custody and control of Sherie. Many of these charges antedate the divorce proceedings. Therefore we see no need to mention them here.

The trial judge in this proceeding is the same trial judge who sat in the divorce proceeding. He is familiar with all of the facts adduced as a result of the domestic problems of these parties and of their respective fitness as parents, and ordered custody of one child to each. It is clear that the demeanor and behavior of each of the parties has considerably improved since the divorce in January 1970.

■ It is elementary in custody cases that each case must be considered and determined separately upon its own facts and the situation before the court. Our statute guiding the court in this area provides:

"In appointing a general guardian or in awarding the custody of a minor, the court is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare, and if the child is of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question; and

"2. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child is of tender years, it should be given to the mother, and if it is of an age to require education and preparation for labor or business, then to the father." Section 30–10–06, N.D. C.C.

In respect to the power of the court in divorce actions, our statute provides:

"In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time." Section 14–05–22, N.D.C.C.

Under the above statutes it has been well established in this state that the best interests and welfare of the children in custody matters are paramount and controlling considerations, and the interests of parents are secondary to consideration of the welfare of their children.

■ In divorce cases the trial court has continuing jurisdiction with reference to the custody, care and education of minor children of the parties. Kinsella v. Kinsella, 181 N.W.2d 764 (N.D.1970); Azar v. Azar, 146 N.W.2d 148 (N.D.1966); Blanton v. Blanton, 142 N.W.2d 608 (N.D. 1966); Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960); Eisenbarth v. Eisenbarth, 91 N.W.2d 186 (N.D.1958); Olson v. Olson, 77 N.D. 444, 43 N.W.2d 689 (1950).

■ We have held in a number of cases that the court should award custody of children in accordance with the best interests of the children and that the interests of the parents are important only to the extent of how their interests bear on the question of what is best for the children. Sabot v. Sabot, 187 N.W.2d 59 (N.D. 1971); Ficek v. Ficek, 186 N.W.2d 437 (N.D.1971); Noakes v. Noakes, 185 N.W. 2d 486 (N.D.1971); Guldeman v. Heller, 151 N.W.2d 436 (N.D.1967); Azar v. Azar, *supra*; Nicholson v. Nicholson, 126 N.W.2d 904 (N.D.1964); Hedman v. Hedman, 62 N.W.2d 223 (N.D.1954); Miller v. Miller, 76 N.D. 558, 38 N.W.2d 35 (1949).

■ When the divorce was granted in January 1970, one female child of a very tender age was placed in the custody of the mother. The other female child, Sherie, also of a very tender age, was placed in the custody of the father. Now the mother, a little over two years later, has applied for custody of Sherie. Her application for custody must be considered in the light of what has happened since the original decision. Hedman v. Hedman, *supra,* followed in Bryant v. Bryant, *supra,* and Guldeman v. Heller, *supra*. The factors for consideration in determining whether there should be a change of custody are the attitudes of the parents toward the child since the divorce, the age of the child, any change of circumstances, the conduct of the custodial party, the morals of the parents, their financial conditions, and any other matters which bear upon the welfare of the child. Hedman v. Hedman, *supra*. However, the paramount considerations in determining to whom the custody of a child shall be awarded after the divorce of its parents are the welfare and best interests of the child. The interests of the parents are important only to the extent of how their interests bear on the question of what is best for the child. Hedman v. Hedman, *supra*.

■ It appears, in the instant case, that the mother of the child has had a successful marriage since her divorce. There is no indication from the record that she has not been a good mother to the younger child, who is in her custody. Her husband testified that he is desirous of having Sherie come into their home, which home, according to the evidence, is a good home; and that he is ready and willing to give the necessary care, love and attention to Sherie in that home. He testified that his take-home pay is about $500 per month.

During the period since the divorce Sherie has been living principally with her paternal grandparents. The trial judge, in ruling on this matter from the bench, stated that he had talked with Sherie and, for the record, stated:

" * * * I might say that she is what I call a wonderful young child; I would say she has been raised properly, as good by the grandparents, if not better, Mr. and Mrs. George Goff, Sr., than by most natural parents raising children; but there comes a critical time in her life now, this action being brought and her mother remarried and establishing what it appears to be a good home for raising two girls. * * *

"I have to think of the best interests of this child, that's the thing, from right now on, and I can't see where a judge wouldn't say that the best interests of the child will be with an established home with the natural mother. She always wanted the child, never abandoned it intentionally, except under circumstances where the parties caused it together, couldn't get along, couldn't live together and have a good home of their own, the natural father and mother. I can't see anything to do here but on this motion change that Paragraph and grant custody to the mother."

The circumstances of the father have also changed to the extent that he has obtained employment which appears to be of a permanent nature in Minneapolis, Minnesota. Except for visitations made to the father, Sherie has been living with her paternal grandparents. Although the father was contemplating marriage, we have no evidence in this record indicating the feelings or desires of his fiancee with respect to Sherie except as indicated in the testimony of the father. The paternal grandparents testified that they love Sherie, and that they are willing and able to continue to care for her in their home until her father remarries and establishes a home, at which time they will gladly give her up to live with him and his wife. It is evident that the paternal grandparents provided a good home for Sherie while she was living with them, although it may be that they could be criticized for overzealousness and overprotectiveness of her.

In the matter of awarding custody of children a large discretion is vested in the trial court, and its decision will ordinarily be interfered with only when there is an abuse of that discretion (Guldeman v. Heller, *supra*; Azar v. Azar, *supra*; Blanton v. Blanton, *supra;* Nicholson v. Nicholson, *supra*; Bryant v. Bryant, *supra*) or its findings are clearly erroneous (Ferguson v. Ferguson, 202 N.W.2d 760 (N.D. 1972); Novlesky v. Novlesky, 206 N.W.2d 865 (N.D.1973)).

Because of the change of circumstances and the conditions now existing, it appears to us that we cannot say that the trial court's findings are clearly erroneous, under Rule 52(a), N.D.R.Civ.P., or that it abused its discretion. For these reasons, we affirm the order of the trial court.

VOGEL and KNUDSON, JJ., concur.

VOGEL, J., not being a member of the Court at the time of submission of this case participated on the briefs filed.

PAULSON, Judge (concurring specially).

I concur in the result.

Since August 1, 1971, the effective date of the amendment to Rule 52(a) of our Rules of Civil Procedure, we have applied the "clearly erroneous" test in determining whether the findings of a trial court should be set aside. In Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972), which was a divorce case involving a custody issue, we said, in paragraph 3 of the syllabus:

"Findings that a party to a divorce action has committed adultery, that the best interests of the children of the par-

ties to a divorce action would be served by awarding custody of the children to one party as opposed to the other, and that a particular division of property between the parties to a divorce action is equitable, are appropriately dealt with on appeal as findings of fact. Consequently, a review of these findings is limited to a determination of whether or not they are 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."

Justice Teigen signed that opinion after considerable debate with reference to the above paragraph of the syllabus.

I find no justification in this opinion for diluting the rule which we have, both through our rule-making power and by decisions of this court supporting Rule 52(a), adopted.

ERICKSTAD, C. J., concurs.