Wanda KEATOR, Plaintiff-Appellant,

v.

Gaylen KEATOR, Defendant-Appellee.

Civ. No. 9540.

Supreme Court of North Dakota.

Feb. 23, 1979.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for plaintiff and appellant; argued by A. William Lucas, Bismarck.

Chapman & Chapman, Bismarck, for defendant and appellee; argued by Daniel J. Chapman, Bismarck.

PAULSON, Justice.

The appellant, Wanda Keator Dewing [hereinafter Wanda or mother], appeals from the order of the Burleigh County District Court denying her motion to modify the judgment rendered in her 1970 divorce from Gaylen Keator [hereinafter Gaylen or father]. Wanda brought the motion to modify the divorce judgment by transferring custody of Dawn Keator [hereinafter Dawn], a minor child of the Keators' marriage, from Gaylen to Wanda when she learned that Gaylen was planning to move to Mobile, Alabama, and take Dawn with him. A hearing on the motion was held in district court on May 9, 1978. On June 9, 1978, the court denied Wanda's motion to modify the divorce judgment by transferring custody of Dawn to Wanda and determined that Gaylen's continued custody of Dawn was in her best interests. We affirm.

Gaylen and Wanda Keator were married in 1966. The Keators' daughter, Dawn, was born on June 23, 1967. Wanda brought a divorce action against Gaylen in 1970. On July 30, 1970, Gaylen was granted a divorce on the ground that Wanda had committed adultery. Gaylen was awarded custody of Dawn and Wanda was granted visitation rights. Wanda did not appeal.

On December 26, 1970, Wanda married Gaylen Dewing [hereinafter stepfather]. During the past six years the Dewings have lived seven miles east of the city of Bismarck in a rural area. They have no children as the issue of their marriage.

Following Gaylen's divorce from Wanda he and Dawn moved into the home of his parents, Mr. and Mrs. Keator [hereinafter paternal grandparents]. The paternal grandparents helped take care of Dawn while Gaylen was working.

Gaylen remarried in 1972 and moved from his parents' home. He and his present wife, Linda Keator [hereinafter stepmother], have 2½ year-old twins as the issue of their marriage. Dawn's stepmother has assisted Gaylen in raising Dawn since 1972.

In 1971 Wanda brought a motion to modify the divorce judgment by transferring custody of Dawn to her. Her motion was denied by the district court.

In 1974 Wanda again brought a motion to modify the divorce judgment requesting a change in custody. Her motion was again denied.

The present appeal arose from a denial of Wanda's third motion to modify the divorce judgment by giving her custody of Dawn. District Court Judge M. C. Fredricks, who presided over the divorce hearing, also presided over the three judgment-modification hearings.

At the time of the hearing in this case Dawn was ten years old. She lived in Bismarck with her father, her stepmother, and two half sisters; attended Grimsrud School; attended church and Sunday school at the First Baptist Church; was an active member of her stepmother's Girl Scout Troop; and was an active member of the YMCA swim team.

Dawn has very close relationships with her father, her stepmother, and her half sisters. She also has very close relationships with her mother and her stepfather whom she sees nearly every week.

Dawn has many relatives in the Bismarck area including her paternal grandparents, maternal grandparents, the parents of her stepfather, and several cousins. She has many friends in the area from school, church, and other activities. In addition, Dawn has a special girl friend who lives near Wanda and her stepfather.

The present action was instituted when Wanda became aware that Gaylen was going to move his family to Mobile, Alabama, in order to take advantage of a business opportunity. Gaylen, a pressman for the Bismarck Tribune, decided to accept a position as the manager of a Village Inn Pizza Parlor in Mobile which is owned by his father-in-law. The father-in-law is seriously ill and needs Gaylen's assistance.

Wanda's major argument in attempting to gain custody was that if Dawn were moved to Alabama she would be deprived of many close relationships with friends and relatives including her mother, stepfather, grandparents, and cousins, who reside in the Bismarck area. Wanda claimed that if Dawn were moved to Alabama, Wanda's visitation rights would be substantially reduced. In addition, Wanda argued that Dawn would suffer by being uprooted from her school, church, Girl Scout Troop, and YMCA swim team.

The evidence presented at trial indicates that both Wanda and Gaylen presently have stable marriages and family lives. In addition, both Dawn's stepfather and stepmother love her very much, have good relationships with her, and would like to have her live in their respective homes.

At the hearing, Wanda presented testimony to show that it was in Dawn's best interests to remain in Bismarck in her mother's custody rather than to be moved to Alabama. Wanda is employed as a purchasing clerk for Montana-Dakota Utilities. Wanda's husband is a certified public accountant employed by Robert James Real

Estate. The Dewings have a newly built home east of Bismarck in which a room was planned for Dawn. Dawn helped choose the wallpaper and carpeting for her room. Since her divorce from Dawn's father, Wanda has taken advantage of every visitation opportunity to see Dawn.

Wanda testified that she should have custody of Dawn because Dawn would receive better care living with her. Although she admitted that Dawn was well-clothed and happy living with Gaylen and her stepmother, Wanda claimed that Dawn could be doing better in school; had occasional cold sores on her face because of an improper diet; was in need of dental care; had a wart on her foot; and had a nervous twitch in her eye.

In addition, Wanda asserted that the move to Alabama would be detrimental to Dawn because the Keators would be temporarily living in a 14' by 70' two-bedroom trailer in which Dawn would have to share a bedroom with her two half sisters; Dawn would not know anyone except the parents and a sister of her stepmother; and Dawn's father's business would cause him to spend little time with her because the Pizza Parlor is open late at night and on weekends; and that the home in Alabama would not be permanent and stable because the Keators later intended to move to the State of Washington.

On the other hand, Gaylen presented testimony that it was in Dawn's best interests to move to Alabama with him. The testimony showed that the move would be beneficial to Gaylen and the family because he had a good business opportunity and his job as a pressman in Bismarck provided little chance for advancement. Dawn's stepmother, who is not presently employed, acts as a full-time mother to Dawn and her two half sisters. When the Keators lived in Bismarck, Dawn's stepmother took her to church, swim meets, and other activities and served as the troop leader of Dawn's Girl Scout Troop.

The Keators testified that Dawn had received and would continue to receive good care from them, physically as well as spiritually. They presented evidence to indicate that Dawn was not doing badly in school; was not in need of dental care, and had had yearly dental checkups; was given a properly balanced diet and had had few cold sores; was not always given a proper diet when she visited Wanda; that the wart on Dawn's foot was very minor; and the nervous twitch in her eye only appeared during times of stress, such as in the present proceeding.

The move to Alabama would not be detrimental to Dawn, according to the Keators, because they would live in the 14' by 70' trailer only temporarily; their family would remain together and would continue to provide a stable family environment; and they had no plans to move to Washington at any time in the near future.

Another factor considered by the district court in determining what would be best for Dawn is Dawn's own preference in the matter. Dawn, who was ten at the time of the hearing, told Judge Fredricks that she desired to move to Alabama with her father and stepmother.

The issue raised on appeal in this case is as follows:

Did the trial court err in denying Wanda's motion to amend the divorce judgment by transferring custody of Dawn from Gaylen to Wanda?

We must first determine the proper basis for granting a change of custody and the proper scope of review on appeal.

The main criterion to be considered by a trial court in awarding custody of a child is what is in the child's best interests. *DeForest v. DeForest,* 228 N.W.2d 919 (N.D.1975); *Goff v. Goff,* 211 N.W.2d 850 (N.D.1973); and *Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972). This criterion also constitutes the main factor to be considered in cases where a change of custody is sought. *Jordana v. Corley,* 220 N.W.2d 515 (N.D.1974); *Silseth v. Levang,* 214 N.W.2d 361 (N.D.1974).

In determining the proper scope of appellate review in this case we must first determine if Rule 52(a), N.D.R.Civ.P., is applicable. In *Ferguson v. Ferguson, supra,* 202 N.W.2d at 761, in paragraph 3 of the syllabus, we held:

"3. Findings . . . that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other . . . are appropriately dealt with on appeal as findings of fact. Consequently, a review of these findings is limited to a determination of whether or not they are 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."

See *DeForest v. DeForest, supra; Matson v. Matson*, 226 N.W.2d 659 (N.D.1975). Although the above-cited cases involved the original award of custody by a trial court, Rule 52(a), N.D.R.Civ.P., has also been held to apply in cases involving motions to amend divorce decrees by transferring custody to the other parent. *Vetter v. Vetter*, 267 N.W.2d 790 (N.D.1978); *Jordana v. Corley, supra; Silseth v. Levang, supra.*

█ Generally, Rule 52(a), N.D.Civ.P., does not apply to decisions on motions. Trial courts are not usually required to prepare findings of fact and conclusions of law in such cases. *Becker v. Becker*, 262 N.W.2d 478, 481 (N.D.1978). However, motions to modify divorce decrees are exceptions to the rule because a fact-finding process is necessary before a court can determine whether a requisite material change has occurred to justify a modification. *Id.* Therefore, a trial court's decision on a motion to modify a divorce decree must be based upon findings of fact and Rule 52(a), N.D.R.Civ.P. applies.[1]

█ In the present case the trial court made the following pertinent findings in its order of June 9, 1978, denying Wanda's motion for a change of custody:

1. The court considered the testimony of the mother, stepfather, father, and stepmother;
2. Both the mother and father have good relationships with Dawn;
3. Both the mother and father are fit and proper parents to have custody of Dawn;
4. Both the mother and father would be qualified and good parents;
5. In private consultation with the court, Dawn expressed a preference to move to Alabama with her father and stepmother; and
6. In view of the present good relationship between Dawn and her father, stepmother, and two half sisters, it is in the best interests of Dawn for her to remain in the custody of her father.

Although the findings were not specifically referred to as findings of fact, we will look to their substance rather than to the labels placed upon them by the court in determining whether they are actually findings of fact. *Ferguson v. Ferguson, supra* 202 N.W.2d at 763.

We conclude that the district court's order contains findings of fact that are reviewable by this court under the clearly erroneous standard of Rule 52(a), N.D.R. Civ.P.

█ A perusal of the record shows that these findings are amply supported by the evidence submitted at the hearing. We conclude that the court's findings were not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. More particularly, we conclude that the trial court's finding that it was in Dawn's best interests to remain in the custody of her father was not clearly erroneous.

Therefore, we hold that the trial court did not err in denying Wanda's motion to amend the divorce judgment by transferring custody of Dawn from Gaylen to Wanda.

The order of the district court is affirmed.

ERICKSTAD, C. J., and SAND, PEDERSON and VANDE WALLE, JJ., concur.

---

[1]. Although detailed written findings of fact and conclusions of law are recommended, in *Becker v. Becker, supra* 262 N.W.2d at 481, we found adequate findings of fact and conclusions of law in the trial court's oral opinion delivered at the conclusion of the hearing.