**Sharon MURASKIN, Plaintiff and Appellant,**

v.

**Murray MURASKIN, Defendant and Appellee.**

**Civ. No. 9597.**

Supreme Court of North Dakota.

Aug. 2, 1979.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiff and appellant; argued by Beryl J. Levine, Fargo.

Kessler & Associates, Grand Forks, for defendant and appellee; argued by David Kessler, Grand Forks.

PEDERSON, Justice.

Sharon Muraskin appeals from a third amended judgment modifying custody of the five minor children born of her former marriage to Murray Muraskin. Under the third amended decree, the district court awarded to Sharon the custody of the parties' two older children, Stephanie, age 17, and Benjamin, age 14, and, to Murray, the

custody of the three younger children, David, age 13, Theodore, age 10, and Samuel, age 8. The judgment is affirmed.

Murray Muraskin and Sharon Muraskin were divorced on October 12, 1976. Shortly thereafter, Sharon, who had custody of Benjamin, David, Theodore and Samuel pursuant to the original decree, moved to Sunrise, Florida. Sharon purchased a house within close proximity to schools and obtained a job as an art instructor to supplement child support and alimony payments provided by Murray. Sharon lived with the four boys approximately one year prior to the present proceedings on the motion to amend the judgment. Sharon testified at the hearing that the children had adjusted well to their new home and were quite happy in Florida.

Murray, who was awarded custody of Stephanie, the parties' oldest child, pursuant to the second amended judgment dated November 22, 1977, remarried and continued his employment as a physics instructor at the University of North Dakota. By the terms of the second amended judgment, Murray was awarded visitation of the four boys in Florida between the period of June 15 and August 15 of each year, during which time he and his family vacationed at his summer cottage in Minnesota. Murray was also granted a ten-day extended visitation period during the Christmas holidays, and occasional weekend visits in Florida to see the children. Both Murray and Sharon testified at the hearing that the four boys and Stephanie appeared to enjoy their 1978 summer vacation at the lake cottage.

In August 1978, while Murray had summer custody of the four boys, he petitioned for an amended judgment in which he sought their custody on a permanent basis. Murray alleged that it was in their best interests to reside with him. In response to Murray's motion, Sharon countered with a cross-motion, asserting, among other things, that there had been no substantial change in circumstances justifying a change in custody. In her motion, Sharon requested custody of Stephanie, an increase in child support, health insurance expenses for the children, and travel expenses for the children's visit to Murray in Grand Forks.

After a lengthy hearing in August 1978, the district court made relevant findings of fact on the parties' motions to amend the judgment, which are summarized as follows:

(1) Each party is fit to have custody of the children.

(2) There was a material change in circumstances subsequent to the second amended judgment entered November 22, 1977.

(3) Both Stephanie and Benjamin would be attending high school and desired to live with their mother.

(4) That Sharon was disrespectful of the prior court judgments and orders of the court concerning visitation on three separate occasions:

(a) By seeking to impose restrictions on Murray's 1977, ten-day extended Christmas visitation period;

(b) By arranging for Stephanie's visitation in Florida in April, 1978, under a cloak of secrecy;

(c) By scheduling, without advising or inviting Murray, the date of David's Bar Mitzvah in Florida during Murray's summer visitation period, when the Bar Mitzvah could have been arranged at some other time.

The court found that, by these actions, Sharon intended to set roadblocks in the way of Murray's attempts to exercise visitation, and that, by so doing, Sharon set a bad example for the children.

(5) Because there are five children involved, keeping the family together is not as important as when there are fewer children.

(6) While Sharon had custody, the two older boys were left to supervise the younger boys for up to two hours while Sharon was at work and, because Sharon is employed full time, it is difficult for her to attend to the needs of the four boys.

(7) It is in the best interests of the three younger boys to live with their father so

that someone is there to meet them after school, and their interests are better served by having both a mother and a father figure in the home.

(8) That Margaret Muraskin, Murray's present wife, can provide a stable and capable mother figure for the three younger boys.

(9) That David Muraskin experienced difficulties adjusting to the move to Florida and that his interests will be served by living with Murray.

Based upon these findings, the court concluded that it would be in the best interests of Stephanie and Benjamin to live with Sharon, and for David, Theodore and Samuel to live with Murray.

Sharon contends that findings relating to custody are clearly erroneous under Rule 52(a), NDRCivP. She specifically argues that the trial court erred in finding that it was in the best interests of the three younger children to reside with Murray.

In divorce cases, the trial court has continuing jurisdiction with reference to the care, custody and education of the minor children. *Goff v. Goff*, 211 N.W.2d 850, 853 (N.D.1973).

Our court has said, on several occasions, that the determination of custody of minor children by the trial court is subject to the "clearly erroneous" provisions of Rule 52(a), NDRCivP, *Hegge v. Hegge*, 236 N.W.2d 910, 914 (N.D.1975). See also, *Vetter v. Vetter*, 267 N.W.2d 790, 792 (N.D.1978). Although, generally, trial courts are not required to prepare findings on motions under Rule 52(a), NDRCivP, there is an exception to motions involving a modification of child custody. The fact-finding process is necessary in this situation to facilitate a proper determination concerning whether there has been a material change in circumstances to justify a change in custody. *Keator v. Keator*, 276 N.W.2d 135, 138 (N.D. 1979).

A particular finding of fact is held to be clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire record is left

with a definite and firm conviction that a mistake has been made. *Bohnencamp v. Bohnencamp*, 253 N.W.2d 439, 443 (N.D. 1977). Even though our court may have viewed the facts differently had it been the initial trier of the case, this alone does not entitle us to reverse the lower court. *Grant v. Grant*, 226 N.W.2d 358, 362 (N.D.1975).

As our court recently stated in *Keator v. Keator, supra*, 276 N.W.2d at 137:

"The main criterion to be considered by a trial court in awarding custody of a child is what is in the child's best interests. *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975); *Goff v. Goff*, 211 N.W.2d 850 (N.D.1973); and *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972). This criterion also constitutes the main factor to be considered in cases where a change of custody is sought. *Jordana v. Corley*, 220 N.W.2d 515 (N.D.1974); *Silseth v. Levang*, 214 N.W.2d 361 (N.D.1974)."

In *Vetter v. Vetter, supra*, 267 N.W.2d at 792, our court held that a party seeking modification of a divorce decree awarding custody must show a change of circumstances or new facts which were unknown to the moving party at the time the decree was entered. In *Vetter* we enumerated the factors which the court should consider in making that decision:

"'The factors for consideration in determining whether there should be a change of custody are the attitudes of the parents toward the child since the divorce, the age of the child, any change of circumstances, the conduct of the custodial party, the morals of the parents, their financial conditions, and any other matters which bear upon the welfare of the child. *Hedman v. Hedman, supra* 62 N.W.2d 223 (N.D.1954). However, the paramount considerations in determining to whom the custody of a child shall be awarded after the divorce of its parents are the welfare and best interests of the child. The interests of the parents are important only to the extent of how their interests bear on the question of what is best for the child.'" 267 N.W.2d at 792.

See also, *Goff v. Goff, supra*, 211 N.W.2d at 853.

We hold that the factors were properly considered by the trial court and a finding that a change of custody of the children was justified under the circumstances is not clearly erroneous.

Murray married his present wife, Margaret, on June 28, 1977. Margaret's testimony at the hearing on the motion to change custody discloses that she is concerned about the welfare of the boys, and showed a substantial interest in having them in her home on a full-time basis. Margaret testified that she was, prior to her marriage to Murray, a teacher's aid in the Fargo Public Schools, which provided her with experience in working with children in the elementary grades. Whether or not she is presently employed is not disclosed in the record.

At the hearing Sharon testified that the four boys were left alone with little, if any, adult supervision for periods of two hours per day while Sharon was at work. Although there is no presumption that a two-parent family can provide a more stable setting in which to rear a family than a one-parent family, it is not clearly erroneous to find that the care and attention required of three youngsters of the ages involved in this action can be difficult when the single parent is also employed. It is not error for a trial court to conclude, when faced with this situation, that two parents would be in a better position to meet the children's demands than one parent. It is in the interests of the children to live in a home setting where one or both of the parents can provide regular, after-school supervision.

Both Murray and Sharon testified at the hearing that David had difficulty in adjusting to the move to Florida. His adjustment difficulties were evidenced by his very low grades in school while in Florida after having received high marks while in the Grand Forks school system. Although David's performance did somewhat improve toward the end of his stay in Florida, the trial court found that his interests would be fostered by Murray, who was extremely concerned about the children's academic achievements. We thus do not find clearly erroneous the trial court's finding that it would be in David's best interest to reside with Murray.

The record is replete with testimony and other evidence of several post-marital misunderstandings between Murray and Sharon with regard to the exercise of Murray's visitation privileges. On three separate occasions Sharon attempted to frustrate Murray's visitation arrangements. When Murray planned to visit in Florida for ten days in December 1977, Sharon notified Murray's attorney that the four boys would have to be home by 10:00 p. m. each evening and that she would have to be alerted as to their whereabouts while they were visiting Murray. Pursuant to an ex parte order of December 7, 1977, Sharon was ordered to comply with the November 22, 1977, judgment by allowing Murray to visit the children on a continuous basis during the Christmas holidays.

On another occasion, Sharon scheduled David's Bar Mitzvah in Florida on June 24, 1977, during the boys' summer vacation in Grand Forks from June 15 to August 15, 1977. It was disclosed at the hearing that this ceremony could have been planned for some other time. After Murray objected, the date was changed to an earlier time so as not to interfere with Murray's visitation.

The third occasion in which there was a misunderstanding arose when Stephanie, without Murray's permission or knowledge, flew to Florida during the school year to visit Sharon. By letter to Stephanie's school authorities, Sharon informed them that Stephanie would be absent but did not ask for Stephanie to be excused. Although Stephanie apparently paid for her own transportation, Sharon did not contact Murray prior to the time travel arrangements were made for Stephanie's departure.

The trial court found that Sharon's actions on these occasions set a bad example for the children. While this conduct, alone, would not constitute a sufficient change in circumstances to warrant a change in custody, the record viewed as a whole indicates that Murray's home provides a more suitable environment in which to raise the three younger children. While Sharon may

regard the court's findings relating to her disregard of the former judgments as extremely punitive, there is little to indicate that the trial court placed an undue emphasis, as a basis for changing custody, on Sharon's attempts to bend the provisions of the former judgments to suit her own needs. Rather, our review of the findings discloses that the trial court reconsidered the provisions of the former judgments in light of what had occurred to the family since Sharon moved to Florida and began working several hours per week.

The findings of fact are amply supported by the evidence and testimony contained in the record and, therefore, are not clearly erroneous. The present custody arrangement will, undoubtedly, provide David, Theodore and Samuel with greater attention, guidance and care provided by a two-parent family. Because Stephanie and Benjamin are old enough to exercise a sufficient degree of independence, their needs can easily be met by Sharon in her present living situation. The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.