Alan BERGSTROM, Plaintiff
and Appellee,

v.

Astrid BERGSTROM, Defendant
and Appellant,

and

Ida Bergstrom, a minor child, by her
Guardian Ad Litem, Cameron L.
Clemens, Defendant.

Civ. No. 10094.

Supreme Court of North Dakota.

May 27, 1982.

Chapman & Chapman, Bismarck, for defendant and appellant Astrid Bergstrom; argued by Daniel J. Chapman, Bismarck.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for plaintiff and appellee Alan Bergstrom; argued by Irvin B. Nodland, Bismarck.

Carma Christensen, Bismarck, for defendant Ida Bergstrom, a minor child, by her guardian ad litem, Cameron L. Clemens; not argued or briefed on appeal.

PAULSON, Justice.

Astrid Slettemoen, formerly Astrid Bergstrom, appeals from a modification order dated July 29, 1981, of the District Court of Morton County. We affirm.

This case marks another episode in the custody dispute over Ida Marie Bergstrom between her parents Alan Bergstrom and Astrid Slettemoen. Our court's most recent opinion involving these parties, *i.e., Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D. 1980), states the facts as they occurred through December of 1979.

In *Bergstrom, supra* 296 N.W.2d 490, we reversed a judgment of the District Court of Morton County which had awarded total custody of Ida to Astrid and which had granted limited visitation to Alan. Instead, we awarded split custody to Astrid and Alan, conditioned, in part, on Astrid's maintenance for Ida of a residence within the United States. Following the issuance of our opinion which directed a remand hearing, the District Court of Morton County, on remand, issued an order on September 17, 1980, granting custody of Ida to Astrid during the school year and to Alan during the summer vacation months. A detailed visitation schedule was formulated and incorporated within the trial court's September 17, 1980, order. In this order the trial court also ruled that Astrid "shall be entitled to designate a two week period of visitation during the summer months of each year for purposes of vacationing with the child".

Subsequently, Ida and her mother, Astrid, established residence in Washington, D.C. Alan also moved to the Nation's capital. Astrid later determined to marry Frank Heller, a man who lives and works in Dubai, one of the United Arab Emirates.

On July 9, 1981, Astrid made a motion for an order in which she sought a transfer of custody to Alan during the school year and that she have custody of Ida during the summer vacation months. Astrid further requested that she have the right to take the child to "wherever she [Astrid] is then living, whether or not that is within the United States". Astrid also moved that Alan be held in contempt for failure to comply with the order of September 17, 1980, relating to Astrid's two-week summer vacation with Ida. The motion also contained a request for the costs and attorney fees which had been awarded to Astrid by the trial court in the December 5, 1979, trial. Astrid married Frank Heller on July 16, 1981.

In response to Astrid's motion, Alan sought an order granting him permanent custody of Ida, with reasonable visitation restricted to the continental United States, to Astrid. After a hearing, the trial court issued a modification order dated July 29, 1981, granting custody of Ida to Alan during the school year and to Astrid during the summer vacation months. Astrid's "request to be permitted to remove Ida ... from the United States for purposes of visitation ... [was] denied." The trial court granted Astrid "additional periods of visitation" with Ida during the school year upon reasonable notice to Alan. Astrid's motion that Alan be held in contempt and for the payment of attorney fees and costs previously awarded was denied.

The first question for consideration is whether or not the trial court erred in denying Astrid's motion to hold Alan in contempt for an alleged failure to comply with the court order of September 17, 1980, granting Astrid the right to designate a two-week summer vacation with Ida.

As noted above, the provision at issue contained in the order of September 17, 1980, stated:

"Astrid Bergstrom ... shall be entitled to designate a two week period of visitation during the summer months of each year for purposes of vacationing with the child."

From the record, it appears that the first mention of Astrid's desire to take a two-week vacation out of the United States with Ida was at a hearing which was held in the Superior Court of Washington, D.C., on June 8, 1981. At that time Astrid's attorney requested that Astrid be allowed to take Ida to Norway on June 19, 1981. The Superior Court of Washington, D.C., denied this request. In his affidavit, Alan states that the first time that he was notified of Astrid's plan to leave for Norway on June 19, 1981, with Ida was on June 17, 1981, only two days prior to Astrid's and Ida's scheduled departure for the trip to Norway. Alan stated that:

"Astrid refused to assure ... [him that] she would not remove Ida to Dubai";

and that she informed him that it was her intention:

"to return Ida at the end of two weeks without accompanyment [sic] on an international airplane flight."

In a letter to Astrid dated June 17, 1981, Alan explained his reasons for opposing Ida's trip to Norway: (1) the need for a new custody arrangement due to Astrid's impending move from the United States; (2) his view that the trip would be against the decision in *Bergstrom, supra* 296 N.W.2d 490; (3) a dispute over his school year visitation rights; and, (4) the fact that he was given only 48 hours' prior notice of Astrid's planned trip with Ida to Norway. Alan and Ida left Washington, D. C., for North Dakota as soon as Ida's school recessed for the summer vacation months.

An appeal will lie to the Supreme Court from an order finding a defendant not guilty of civil contempt. *Red River Valley Brick Corp. v. City of Grand Forks*, 27 N.D. 431, 146 N.W. 876 (1914). Contempt is committed only when the evidence shows willful and inexcusable intent to violate the order of the court. *Raszler v. Raszler*, 80 N.W.2d 535, 539 (N.D.1957). The matter of determining whether or not a contempt has been committed is within the sound discretion of the trial judge and his decision should not be disturbed unless there is a plain abuse of discretion. *See generally Brierly v. Brierly*, 431 A.2d 410 (R.I.1981); 17 C.J.S. *Contempt* § 57 (1958). Under the particular circumstances of this case, we cannot say that the court abused its discretion in determining that Alan should not be held in contempt for his alleged noncompliance with the court's order.

A further issue raised concerns the trial court's denial of Astrid's request for attorney fees and costs. The award [1] of attorney fees and costs in the amount of $12,552.90 was incorporated in the February 14, 1980, judgment, which judgment was subsequently reversed in *Bergstrom, supra* 296 N.W.2d 490 (N.D.1980).

On appeal, Astrid contends that that portion of the district court's February 14, 1980, judgment awarding attorney fees and costs was not canceled by our reversal of the judgment. To support her view, Astrid relies on *Hoster v. Hoster*, 216 N.W.2d 698 (N.D.1974). In *Hoster, supra* 216 N.W.2d at 703, the North Dakota Supreme Court upheld an award of attorney fees to the former wife despite such court's reversal of the trial court's order denying the former husband's motion to modify the divorce decree. The case is inapposite to the point in issue. In *Hoster, supra*, the question of the propriety of the award was before this court on direct appeal by the losing party. In the instant case, the judgment awarding

---

1. The provision awarding costs contained in the February 14, 1980, judgment states, in pertinent part:

"X

"That the father is required to pay all of the mother's costs of defending this action, including her attorney's fee, witness fees and her costs of travel and subsistence for the hearing and for her costs incurred in delivery of custody of the child to the mother ...."

As was noted in *Bergstrom, supra* 296 N.W.2d 490, 493 n.1, the appeal was erroneously taken from the order instead of from the district court judgment. The notice of appeal did provide that the appeal of the order was from "each and every part thereof". The dispositional language in the *Bergstrom* opinion states that "The judgment is reversed and the case is remanded for such action as may be necessary to comply herewith." *Bergstrom, supra* 296 N.W.2d at 497.

attorney fees and costs was reversed on appeal (*Bergstrom, supra* 296 N.W.2d 490), and a motion seeking these attorney fees and costs was made subsequent to this court's reversal of the February 14, 1980, judgment which included such award.

Generally, the effect of a reversal on appeal is that the judgment is vacated and the parties are put in the same posture as they were in before the judgment was entered. Dependent orders and proceedings fall with the reversal of the judgment. *See generally* 5 Am.Jur.2d *Appeal and Error* § 956 (1962); 5B C.J.S. *Appeal and Error* § 1951 (1958); *cf. Samuel v. White Shield Public Sch. Dist.*, 297 N.W.2d 421, 425 (N.D.1980) (costs taxed in conjunction with the judgment were set aside because the judgment was set aside). The Supreme Court's reversal of the judgment necessarily reversed the trial court's award of attorney fees and costs. *Lerdall v. Lerdall*, 199 N.W. 1016 (Iowa 1924). We conclude that the trial court did not err in denying Astrid's request for attorney fees and costs.

The heart of this appeal is the trial court's decision to restrict Astrid's custody of Ida and visitation only within the confines of the United States. Our decision in *Bergstrom, supra* 296 N.W.2d 490, conditioned the award of custody to Astrid on her maintenance of a residence for Ida in the United States. The impetus for Astrid's motion to modify the judgment was her decision to remarry and leave the United States.

A hearing on Astrid's motion for a modification order was held in the Morton County District Court on July 23, 1981. Ida's guardian ad litem had discussed the possibility of visits to Norway, to Dubai, and to England with Ida and conveyed the child's reactions to the court, when he testified:

> "A Ida was very strong in stating that she did not want to leave the United States. Her concern was whether she would be returned to the [this] country not that she was adverse to travel or to visiting other friends or relatives or other countries, but she was concerned that if she did leave the country she would not be returned."

The guardian reported that Ida "did not feel she could trust the [her] mother to bring her back". According to her guardian, Ida's mistrust of her mother extends only to matters involving travel and finances. The guardian testified that Ida expressed "a great deal of love" and trust for her mother in other areas.

Astrid testified that she had told Ida that "it was impossible for me to live and maintain a good home for her in the States". In Astrid's view, Dubai posed no threat to Ida. Astrid testified that the government there had imposed no restrictions on leaving the country. Astrid related Ida's thoughts, "[Ida] has said that she doesn't know who she should believe, me, who say I will return her, or her father, who says she won't be returned. She said, 'I have no way of knowing who I should trust'."

Alan, who stated that he is a specialist on Middle Eastern affairs, considers Dubai an unsafe place for a child to visit. The instability in the region, certain principles of Islamic and Saudi law that govern in Dubai, and exit restrictions often imposed in Middle Eastern countries, were the reasons advanced in support of his conclusion.

In spite of the requirement that Rule 52(a) of the North Dakota Rules of Civil Procedure applies to a motion to modify a divorce decree [*Keator v. Keator*, 276 N.W.2d 135, 138 (N.D.1979)], the trial court in the instant case did not prepare findings of fact and conclusions of law. In *Becker v. Becker*, 262 N.W.2d 478, 481 (N.D.1978), however, we found adequate findings of fact and conclusions of law in the trial court's oral opinion delivered at the conclusion of the hearing. Similarly, in this case, we are able to determine the basis for the trial judge's decision from his oral opinion. The trial judge found as a fact that Ida "does not wish to leave the United States". As a matter of law, the trial judge ruled that he was bound by *Bergstrom, supra* 296 N.W.2d 490, to conclude that "the child, under no circumstances, be permitted outside of the United States". The trial judge also noted:

"I've read that Supreme Court decision [*Bergstrom, supra* 296 N.W.2d 490] . . . several times . . . and the emphasis there is on the best interests of the child as determined more or less by the wish . . . of the child."

In evident response to Alan's indication that he would not oppose a Norwegian sojourn for Ida in the future, the trial court included the following provision in his order:

"9. Nothing contained herein shall prohibit the parties from entering into such additions, amendments, deletions or changes to this Order as the parties themselves may agree to in writing. . . ."

The singular question we must decide is whether or not Astrid's remarriage and move to Dubai create changed circumstances under which the best interests of the child dictate that the custody order be modified to allow Astrid to remove the child from the United States.

 The best interests of the child govern the modification of a custody decree. *Jordana v. Corley,* 220 N.W.2d 515 (N.D.1974). The "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P., governs our review of the trial court's decision. *Miller v. Miller,* 305 N.W.2d 666 (N.D.1981).

Our decision in *Bergstrom, supra* 296 N.W.2d 490, conditioning the award of custody upon Astrid's maintenance of a residence for Ida in this country, was based on the best interests of the child. The trial court in *Bergstrom* had awarded total custody of Ida to her mother, wherever she might reside, despite its own finding that Ida preferred to live in the United States with her father. The trial court had also discounted the expert testimony regarding Ida's greater sense of belonging with her father. *Bergstrom, supra* 296 N.W.2d at 495. We held in *Bergstrom, supra* 296 N.W.2d at 497, that the

" . . . view and preference of a citizen-child who is capable of intelligently exercising a choice of residence is a significant factor to be considered in determining the best interests of the child . . . ."

We, therefore, concluded that the portion of the custody award permitting Astrid to take Ida to Norway was, in the light of Ida's expressed preference, against the best interests of the child. *Bergstrom, supra.*

The critical new facts or changed circumstances before the trial court in the case at bar were Astrid's recent remarriage and move to Dubai, and Ida's wish to remain in the United States. In view of this evidence, we do not believe that the trial court's decision to limit Astrid's custody and visitation to the United States was clearly erroneous.

 Astrid, however, contends that the restriction on the award of custody unduly deprives her of her parental rights. We do not agree. A parent has a basic fundamental right to his or her children, but this right is not absolute. *C. B. D. v. W. E. B.,* 298 N.W.2d 493, 499 (N.D.1980). We have said repeatedly that the interests of a child's parents, in a custody dispute, are important only to the extent that they bear on the question of what is best for the child. *Muraskin v. Muraskin,* 283 N.W.2d 140, 142 (N.D.1979), citing *Vetter v. Vetter,* 267 N.W.2d 790, 792 (N.D.1978). As noted above, Ida's best interests dictate that she remain in the United States. Astrid's decision to remarry and leave the United States was made with knowledge that the award of custody of Ida was dependent upon Astrid's residence in this country.

Finally, Astrid contends that the trial court's restriction to this country of her visitation with Ida was not required by the decision in *Bergstrom, supra* 296 N.W.2d 490. Astrid correctly recognizes that *Bergstrom* was not concerned chiefly with overseas visitation; the issue considered was whether or not the district court's decision of February 14, 1980, that Astrid have total custody of Ida with no restriction placed on Astrid's right to choose Ida's place of residence, and with limited visitation granted to Alan, was in Ida's best interests. While the trial judge may have read *Bergstrom, supra* 296 N.W.2d 490, too broadly, it is clear that his decision to restrict visitation to the United States was

based on the evidence of Ida's reluctance to leave this country. This decision appears to be in the best interests of the child and is not clearly erroneous.

The July 29, 1981, modification order is affirmed. There will be no costs awarded on this appeal.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I agree with the majority opinion except that portion which discusses Astrid's overseas visitation with Ida. As the majority opinion recognizes, our previous decision in *Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D.1980), was not concerned chiefly with overseas visitation but rather whether or not Astrid had the right to choose Ida's place of residence without regard to Ida's best interests. To me there is a vast difference between a permanent place of residence and a few weeks' visitation overseas during the summer. Ida's reluctance to leave this country for a permanent residence overseas is more significant and entitled to more consideration than her reluctance to visit overseas for a few weeks during the summer.

As the majority opinion concedes, the trial judge apparently read our previous decision in *Bergstrom, supra,* to prohibit any overseas travel. Because our decision was concerned with a permanent overseas residence for Ida, I do not believe the decision is applicable to the issue of overseas visitation. This appeal arose out of Astrid's desire to take Ida to Norway to visit her grandparents. I believe Astrid should be permitted to take Ida to Norway for a few weeks' visit during the summer under proper restrictions. I realize that once Ida and Astrid are beyond the jurisdiction of the courts of this country difficulties could arise should Astrid not voluntarily return Ida to the United States. However, there has been no indication whatsoever of Astrid's refusal to abide by the orders of the courts of this State and other jurisdictions within this country during the long and painful saga of this family dispute. If Astrid intends to violate the orders of the courts of this country she could as well spirit Ida out of the country during the visitations already permitted between herself and Ida in this country. Absent any evidence of such an intent on the part of Astrid I believe she should be permitted to take Ida to Norway to see her grandparents for a few weeks during the summer.

I would remand to the trial court with directions that it permit Astrid to take Ida overseas for a few weeks during the summer. The trial court may place restrictions on that travel such as requiring that Ida be accompanied by an adult, including Astrid, while flying international routes, and prohibiting travel to Dubai if that part of the world appears to be unsafe for travel.