**ANCHOR ESTATES, INC., Plaintiff and Appellant,**

v.

**STATE of North Dakota, Defendant and Appellee.**

Civ. No. 900289.

Supreme Court of North Dakota.

Feb. 21, 1991.

William R. Mills, Bismarck, pro se.

Charles M. Carvell (argued), Asst. Atty. Gen., Bismarck, for defendant and appellee.

GIERKE, Justice.

Anchor Estates, Inc. appeals from a district court judgment dismissing a contempt

---

action against the State of North Dakota. We affirm.

Anchor's contempt action involves disputed ownership of the riverbed of the Missouri River in Section 29, Township 138 North, Range 80 West in Burleigh County. The plat of the original survey of Section 29 in 1872 included six lots plus a 40-acre tract of land:

The State owned the land to the north and west of the old riverbed; i.e., lots 1, 2, 3, 4 and the 40-acre tract. Anchor owned the land to the east and south of the old riverbed; i.e., lots 5 and 6.

After the original survey, land began to accrete to Lots 1 through 6 as the Missouri River moved to the southwest. In October 1967, the State, through the State Board of Administration, and Anchor entered into an agreement to establish the boundary between their lands as:

"An imaginary line beginning at a point on the East line of Section Twenty-nine, Township 138 North, Range 80 West, in Burleigh County, North Dakota, a distance of 1254 feet South of the Northeast Corner of said Section, thence South 62½° W. 570 feet, thence South 40° W. 640 feet, thence South 37½° W. 765 feet to an intersection with the original meander line of the right bank of the Missouri River, looking up stream, as shown by the original field notes on file in the General Land Office at Washington, D.C. and thence from said point directly southwest to the south section line of Section Twenty-nine, Township 138 North, Range 80 West, in Burleigh County, North Dakota."

The parties agreed that the State owned the land north and west of the boundary in lots 1, 2, 3, 4, and the 40-acre tract, and that Anchor owned the land south and east of the boundary in lots 5 and 6.

Anchor then commenced a "friendly" quiet title action against the State. Judgment was entered on November 2, 1967, in which the court determined that Anchor owned lots 5 and 6 which consisted of all land in Section 29 lying south or east of the boundary and that the State owned the 40-acre tract and lots 1, 2, 3, and 4 which consisted of all land in Section 29 lying north or west of the boundary. The judgment enjoined each party from asserting claims to the other's property.

In 1989 the Legislature transferred primary jurisdiction over the beds of navigable rivers, including the Missouri River, from the Board of University and School Lands to the State Engineer and defined sovereign lands as "beds, islands, accretions, and relictions lying within the ordinary high watermark of navigable lakes and streams." 1989 N.D.Sess. Laws ch. 552, § 3. The State Engineer adopted administrative rules regulating activities below the ordinary high water mark of navigable lakes and rivers. N.D.Admin. Code ch. 89-10-01.

■ Anchor then brought this contempt proceeding, alleging that the legislation and administrative rules regulating activities below the ordinary high water mark of navigable rivers violated the 1967 quiet title judgment because that judgment gave Anchor title to the riverbed in lots 5 and 6 of Section 29. The State contended that the 1967 quiet title judgment did not determine title to the riverbed.

The district court determined that the 1967 judgment was unclear about ownership of the riverbed in Section 29 and therefore the State was not in contempt of that judgment. The court dismissed the contempt proceeding.

On appeal Anchor contends that the 1967 judgment permanently established title to all the land in Section 29, including the riverbed. Anchor claims that the State's

sovereign land statutes and rules, which regulate activities below the high water mark of navigable rivers, interferes with Anchor's title and constitutes contempt of the 1967 judgment.

The State responds that the 1967 litigation only defined the boundary between the accreted land in Section 29 and that the judgment did not decide ownership of the riverbed. It argues that because of the uncertainty of title of the riverbed, the trial court did not abuse its discretion in failing to find the State in contempt of the 1967 judgment. We agree.

 A complainant in a civil contempt proceeding must clearly and satisfactorily show that the alleged contempt has been committed. *Buchmann v. Buchmann*, 202 N.W.2d 677 (N.D.1972). Civil contempt requires a willful and inexcusable intent to violate a court order. *Bergstrom v. Bergstrom*, 320 N.W.2d 119 (N.D.1982). A determination of whether or not a contempt has been committed is within the sound discretion of the trial court, and its determination will not be disturbed on appeal absent an abuse of discretion. *Fargo Women's Health Organization v. Larson*, 391 N.W.2d 627 (N.D.1986); *Bergstrom v. Bergstrom*, 320 N.W.2d 119 (N.D.1982). An abuse of discretion occurs when a trial court acts in an arbitrary, unconscionable, or unreasonable manner. *Fargo Women's Health Organization v. Larson, supra.*

 In this case, the parties' 1967 agreement defined the boundary between the accreted land in lots 1 through 4 and lots 5 and 6 without reference to the riverbed or sovereign land. The quiet title judgment refers to the accreted land and adopts the same boundary line as in the boundary agreement. Although the pleadings and judgment refer to "all land" in Section 29, the context of the use of that phrase describes ownership of the land in the particular lots on one side or the other of the agreed boundary line dividing the accretions. The riverbed and sovereign lands are not specifically mentioned in the pleadings or judgment. There is no indication that either party contemplated that the riverbed was involved. At best the judgment is unclear about ownership of the riverbed. Assuming that a contempt action could lie against the State for the alleged conduct in this case, we cannot say that under these circumstances the trial court acted arbitrarily, capriciously, or unreasonably in refusing to find the State in contempt of the 1967 judgment. Because the extent of ownership of the riverbed is unclear and some type of "ownership" interest is a prerequisite for an action for condemnation [*see* 27 Am.Jur.2d, Eminent Domain, § 247 (1966)], we also do not believe that, without a clear determination of ownership, Anchor may use this contempt proceeding as a condemnation action.

Nothing in this opinion precludes Anchor from asserting a condemnation claim if it chooses to do so [*see Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979)], and we express no opinion on Anchor's argument that before the 1989 legislation, the State owned land below the low watermark of a navigable stream. *Compare Perry v. Erling*, 132 N.W.2d 889 (N.D.1965) (Teigen, J., concurring) *with J.P. Furlong Enterprises, Inc. v. Sun Exploration and Production Co.*, 423 N.W.2d 130, 132 at n. 1 (N.D.1988) and Carvell, North Dakota Waterways: The Public's Right of Recreation and Questions of Title, 64 N.D.L.Rev. 7 (1988).

The district court judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.