Beverlee SPILOVOY, a/k/a Beverly
Spilovoy, (n/k/a Beverly Spilovoy
Williams), Plaintiff and Appellee,

v.

Richard SPILOVOY, Defendant
and Appellant.

Civ. No. 910333.

Supreme Court of North Dakota.

July 28, 1992.

Irvin B. Nodland of Nodland & Dickson, Bismarck, for plaintiff and appellee.

Naomi H. Paasch of Strehlow, Bryan & Paasch, Casselton, for defendant and appellant.

VANDE WALLE, Justice.

Richard Spilovoy appealed from an amended judgment of the district court modifying his child support obligation. Richard argues that the trial court erred in setting the amount of child support and in refusing to hold Beverlee Spilovoy Williams in contempt for violation of the visitation provisions in their original divorce decree. We affirm in part, reverse in part, and remand for further proceedings.

Richard and Beverlee were married in 1971. The couple had two children: Stacey, born in 1978, and Michelle, born in 1980. The parties were divorced in 1990. Pursuant to an agreement incorporated in the divorce decree, the parties were awarded joint custody of the children, with Richard having physical custody of Stacey and Beverlee having physical custody of Michelle. At the time of the divorce, Richard was earning more than $80,000 per year as a health care executive in Fargo. Richard

agreed to pay Beverlee $900 per month child support for Michelle. Beverlee was unemployed and the parties agreed that "because of Beverlee's present employment situation, she will not presently be paying any child support to Richard for Stacey."

After the divorce, Beverlee moved to Hazen and remarried. Beverlee and her new husband have had one child and Beverlee remains unemployed. Richard's job in Fargo was eliminated and he became employed as a hospital administrator in Turtle Lake, where he is paid approximately $55,-000 per year.

On February 15, 1991, Richard moved to reduce his child support obligation for Michelle and to require Beverlee to pay child support for Stacey in accordance with the North Dakota Department of Human Services Child Support Guidelines, Chapter 75–02–04.1, N.D.Adm.Code. Richard also sought compensatory visitation for Beverlee's allegedly wrongful denial of Christmas 1990 visitation. Beverlee was ordered to show cause why she should not be held in contempt for violating the visitation provisions of the divorce decree.

The trial court declined to hold Beverlee in contempt and refused to grant Richard's motion for compensatory visitation. After finding a substantial change of circumstances, the trial court reduced Richard's child support obligation for Michelle to $600 per month and ordered Beverlee to pay $10 per month for Stacey's support. Richard appealed.

We consider first Richard's assertion that the trial court erred in failing to find Beverlee in contempt and in refusing to award him compensatory visitation.

■ In a civil contempt proceeding, a complainant must clearly and satisfactorily show that the alleged contempt has been committed. *Buchmann v. Buchmann,* 202 N.W.2d 677 (N.D.1972). Civil contempt requires a willful and inexcusable intent to violate a court order. *Anchor Estates, Inc. v. State,* 466 N.W.2d 111 (N.D.), *cert. denied,* — U.S. —, 111 S.Ct. 2239, 114 L.Ed.2d 481 (1991). The matter of determining and dealing with contempt is within the sound discretion of the trial court, and

its determination will not be disturbed on appeal absent an abuse of discretion. *See Bergstrom v. Bergstrom,* 320 N.W.2d 119 (N.D.1982); 17 C.J.S. *Contempt* § 57 (1963). An abuse of discretion occurs when a trial court acts in an arbitrary, unconscionable, or unreasonable manner. *Fargo Women's Health Organization v. Larson,* 391 N.W.2d 627 (N.D.1986).

■ The visitation schedule in the divorce decree provided for alternating weekends and holidays for each parent. It would serve no useful purpose to detail the problems of the parties in implementing these visitation provisions. The affidavits of the parties are rife with various grievances, conflicting accusations, and explanations to justify their conduct. The trial court, obviously frustrated with the parties' inability to cooperate, refused to hold Beverlee in contempt and, instead, stated that it would impose a strict, detailed, and lengthy visitation schedule if the parties were unable to work out their visitation problems. Richard has not convinced us that the trial court abused its discretion in refusing to hold Beverlee in contempt and in denying him compensatory visitation.

Richard also asserts that, under the child support guidelines, the trial court erroneously computed Beverlee's child support obligation for offset against his obligation. We agree.

■ We initially reject Beverlee's assertion that the child support guidelines do not apply to a determination of her support obligation in this case. A majority of this court has ruled that the trial court must determine that a material change of circumstances has occurred, without reference to the guidelines, before it can modify child support. *Garbe v. Garbe,* 467 N.W.2d 740 (N.D.1991). Beverlee does not dispute that Richard's substantial decrease in salary constituted a material change of circumstances authorizing the court to adjust his child support obligation. *See Clutter v. McIntosh,* 484 N.W.2d 846 (N.D.1992). But she asserts that, since the divorce decree was entered, there has been no material change in her circumstances to justify re-

consideration of her support obligation. We disagree.

A court has the power to modify the child support provisions of a divorce decree whenever there has been a material change of circumstances, even when the original judgment was based upon an agreement of the parties. *Puklich v. Puklich,* 463 N.W.2d 651 (N.D.1990). Although Beverlee remains unemployed, she has remarried and now receives "a substantial benefit from the income" of her new spouse. *Becker v. Becker,* 262 N.W.2d 478, 481 (N.D.1978). Moreover, a significant factor in a proceeding to modify child support is evidence of a change in the financial circumstances of *either* party to the divorce. *Burrell v. Burrell,* 359 N.W.2d 381 (N.D.1985). Richard's significant reduction in pay could, in itself, justify reexamination of Beverlee's support obligation for Stacey. *See Becker, supra.* We conclude that the trial court did not err in determining that material changes in circumstances authorized adjustments in the child support obligations of both Beverlee and Richard. Accordingly, the child support guidelines, having become effective February 1, 1991, prior to Richard's motion and the hearing on the matter, are applicable for determining Beverlee's support obligation.

Section 14–09–09.7(3), N.D.C.C., establishes a rebuttable presumption that the correct amount of child support is obtained by applying the child support guidelines. *Bergman v. Bergman,* 486 N.W.2d 243 (N.D.1992). This presumption may be rebutted by evidence establishing that factors not considered by the guidelines would result in undue hardship to the obligor or supported child. *Montgomery v. Montgomery,* 481 N.W.2d 234 (N.D.1992). A "written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted." Section 14–09–09.7(3), N.D.C.C.

The presumptively correct amount of child support is determined by calculating a scheduled percentage of the obligor's net income. *Clutter, supra;* § 75–02–04.1–10, N.D.Adm.Code. Where,

as here, custody of children is split between the parents, the amount of child support is computed for each parent, and the lesser amount is subtracted from the greater. *Clutter, supra;* § 75–02–04.1–03, N.D.Adm.Code.

The guidelines broadly define an obligor's gross income to include not only earnings from employment, but also the "cash value of in-kind income received on a regular basis" and "income imputed from assets." Section 75–02–04.1–01(2), N.D.Adm. Code. "In-kind income" is defined as

"the receipt of any valuable right, property or property interest, other than money or money's worth, including, but not limited to, forgiveness of debt (other than through bankruptcy), use of property, including living quarters at no charge or less than the customary charge, and the use of consumable property at no charge or less than the customary charge."

Section 75–02–04.1–01(3), N.D.Adm.Code. Although the income of the spouse of an obligor generally should not be considered as income of the obligor for child support purposes, the "value of in-kind income contributed by the spouse to the obligor must be considered, as where the obligor's spouse meets the cost of providing living quarters or transportation used by the obligor, or otherwise allows the obligor to avoid ordinary living expenses." Section 75–02–04.1–08, N.D.Adm.Code.

In *Clutter, supra,* we held that the concept of in-kind income is not confined to basic living expenses such as the cost of housing and transportation, but encompasses anything else that allows the obligor to avoid ordinary living expenses. In that case, we noted that in-kind income could include expenses such as clothing, furniture, entertainment, church and charities, club memberships, vacations, and life and disability insurance. We also held that simply dividing the monthly living expenses by the number of people in the household for purposes of apportioning the obligor's share of those expenses is inappropriate in some circumstances. Rather, we recognized that the value of benefits a child

derives from its stepparent's support that exceeds the child support contributions given for that child by the noncustodial parent may be properly viewed as in-kind income, to some extent allocable to the obligor in a split custody situation.

In addition to in-kind income, the guidelines provide for imputing income from assets. Section 75–02–04.1–07, N.D.Adm. Code, states:

"All assets, other than property claimable as a homestead under North Dakota Century Code section 47–18–01, necessary household goods and furnishings, and one motor vehicle in which the parent owns an equity not in excess of fifteen thousand dollars must be considered for the purpose of imputing income. Annual net property income equal to six percent of the parent's equity interest in all such property which does not produce at least six percent return on equity, reduced by the actual net property income, must be imputed."

In this case, Beverlee listed more than 20 items of her family's monthly living expenses which totaled $2,558. Richard argued to the trial court that imputing income from some of Beverlee's other assets, including equity in a lake home and cash, totaled an additional $100 per month available to her for computing her child support obligation. During the hearing on the motion, the trial court stated, "I am going to impute a little bit. I don't think it's going to make any difference, the imputed income. It will still be minor ... under the guidelines." In its memorandum opinion the trial court summarily stated that it had "considered the income of the parties, the imputed income, and all other matters concerning child support," and ordered Richard to pay $600 per month for Michelle's support and Beverlee to pay $10 per month for Stacey's support. The findings of fact and conclusions of law shed no light on how the trial court arrived at its computation of Beverlee's support obligation. The trial court found that the living expenses for Beverlee's family totaled $2,558, but there is no finding of Beverlee's allocable share of those expenses for purposes of computing Beverlee's in-kind income. No mention is made of imputing income from Beverlee's other assets. Nor is there a finding that the presumption under § 14–09–09.7(3) has been rebutted.

■■■■ A trial court's findings of fact must adequately explain the basis for its decision. *Tuff v. Tuff,* 333 N.W.2d 421 (N.D.1983). A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines. Absent any specific findings as to Beverlee's allocation of in-kind income or on imputing income from Beverlee's other assets, we conclude that the trial court's determination of Beverlee's child support obligation is clearly erroneous. We therefore remand for more detailed findings and a recomputation of Beverlee's child support obligation to be offset against Richard's obligation in accordance with the guidelines.

■■■ Two of Richard's arguments require additional comment. First, Richard asserts that the $600 per month he was ordered to pay for Michelle's child support is income to Beverlee which is required to be considered in calculating Beverlee's child support obligation for Stacey. We reject this contention.

■■■ Although a custodial parent may have a representational right to collect support on behalf of a child, the right to the support actually belongs to the child. *Sprynczynatyk v. Celley,* 486 N.W.2d 230 (N.D.1992). The right to the $600 per month in support belongs to Michelle rather than Beverlee. Also, the guidelines provide a formula for determining an appropriate amount of child support. Treating child support payments as income in determining an offsetting child support obligation would subject the court, counsel, and the parties to a hopelessly circuitous venture. Because the guideline amounts are applicable in split custody situations, we assume that the concept of reciprocal child support obligations was considered and taken into account in arriving at the appropriate figures in the first instance.

Second, Richard asserts that because Beverlee has chosen to remain unemployed and instead takes care of the child of her remarriage, Beverlee should be presumed as having an additional minimum wage net income of $565 per month available for computation of her child support obligation. While Richard's proposal raises interesting public policy questions, the guidelines do not provide that minimum wage income be imputed to a child support obligor who remains in the home to care for a child of the remarriage. Moreover, the trial court did not find that Beverlee had voluntarily placed herself in her position in order to avoid her support obligation to Stacey. *See, e.g., Perry v. Perry,* 382 N.W.2d 628 (N.D.1986). The record reflects that, in addition to her new child, Beverlee must attend to Michelle, who has been diagnosed as having an attention deficit disorder. Beverlee testified that there are virtually no jobs in the Hazen area that pay enough to make it worthwhile for her to hire babysitters and work outside the home. If a minimum wage income should be imputed to a child support obligor under these circumstances, that argument is best made to the agency promulgating the guidelines and, if failing there, to the Legislature.

Accordingly, we affirm the trial court's refusal to find Beverlee in contempt and to award Richard compensatory visitation. We reverse the trial court's determination of Beverlee's child support obligation and remand for more specific findings and a redetermination of her obligation in accordance with the guidelines.

ERICKSTAD, C.J., and MESCHKE and JOHNSON, JJ.

LEVINE, Justice, concurring specially.

I write specially to offer a lifeline to trial courts in their effort to apply the concept of in-kind income.

The expansive language of the guideline defining in-kind income as "the receipt of *any* valuable right ... including living quarters at no charge or less than the customary charge" (emphasis added) can, if we allow it, impose, in practice, a financial obligation on stepparents that is prohibited by law. *See* NDCC § 14–09–09. It can also turn on its head the longstanding tradition that child support is paid based upon a balance between the noncustodial parent's ability to pay and the needs of the child, *e.g., Heller v. Heller,* 367 N.W.2d 179 (N.D.1985). As I forecasted in *Clutter v. McIntosh,* 484 N.W.2d 846 (N.D.1992) (Levine, J., concurring), it also raises public policy questions about parents continuing to stay home to care for children if they are to be assessed child support for children not in their custody.

I propose a resolution that may extricate us from the horns of the in-kind-income dilemma. Marriage is now commonly perceived as an economic partnership, in which each partner assumes a variety of duties, acceptable to each other, whether or not conforming to traditional expectations. *See Volk v. Volk,* 376 N.W.2d 16, 19 (N.D. 1985) (Levine, J., concurring and dissenting). Indeed, "working women," *i.e.,* those employed outside the home, and homebound child-caring fathers are but some of the permutations that we see in these marital partnerships. So if a married couple, *i.e.,* the partnership, decides that mother will stay home to perform child-care, father-care, home-care, community-care, etc., while father will earn an income from employment outside the home, the integrity of the partnership remains the same. There is no less an economic partnership than when both parents work outside the home. Ordinarily, in a marriage of some duration, equal value is attributable to each party's contributions to the marital enterprise. *See Briese v. Briese,* 325 N.W.2d 245 (N.D. 1982). The labor of child-care, home-care and all other care thus constitutes "value." Consequently, as in this case, the mother's use of the living quarters is not one that is without "charge" or one that is for "less than customary charge." The mother "pays for" her living quarters with her contribution of labor, as does the father. Whether we view the value of the labor expended in fulfilling household duties as a setoff against the rent or whether we view it as a payment for rent thereby removing

it from the "no-charge" definition of in-kind income, I am not sure. But I am sure that the guideline must not be interpreted to demean the valuable contribution of labor made by at-home, child caring and/or spouse caring spouses.

In my view, the factfinder should be free to assess, as a matter of law, the value of the at-home spouse's contribution in an amount at least equal to the value of her or his ordinary living expenses. At least, it should be able to do so, as a matter of fact, based upon the particular circumstances of a case.