### UNITED STATES v. ARMOUR & CO.
#### No. 9349.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 15, 1947.

Decided April 26, 1948.

Charles E. Kenworthey, of Philadelphia, Pa. (Schnader, Kenworthey, Segal & Lewis, of Philadelphia, Pa., on the brief), for appellant.

Walter A. Gay, Jr., Asst. U. S. Atty., of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted on seventeen counts of an indictment which charged it with violating regulations issued pursuant to the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq., prohibiting tie-in sales.

The violations occurred at three of appellant's branch houses, two in Philadelphia and one in Norristown. All three branch houses were supervised by a district manager and there was no evidence that he had any knowledge of the offenses. There was some evidence that the assistant manager of the Philadelphia, Noble Street, branch ratified a salesman's violation of the particular regulation. There was evidence that a salesman had stated to a customer that he had received orders from the office in Chicago to make named tie-in sales. There was evidence that the manager at Norristown himself committed the offenses involving that house. There was evidence on behalf of the appellant that the home office of the appellant sent out written instructions to its managers not to force the customers to buy one product in order to obtain another product and that it repeated

these in substance on at least three other occasions. Also there was evidence that at meetings of defendant's employees, held in the branch houses, there were full discussions of price control regulations, pursuant to directions of the home office and that the salesmen were instructed in the various regulations and the interpretations thereof with particular reference to tie-in sales. Appellant concedes for the purposes of this appeal that the evidence was sufficient to support a finding on each of the seventeen counts that one of its salesmen required a customer to purchase one commodity as a condition to the sale of another commodity. The district judge sitting without a jury found as facts that:

"(1) defendant, in good faith, instructed all its district managers, branch house managers and assistant branch house managers, never to make or permit to be made any tie-in sales.

"(2) defendant, in good faith, instructed all its salesmen never to make any tie-in sales."

Following conviction appellant moved for a judgment of acquittal which the trial court denied.

On this state of facts appellant argues that it should not be held responsible for the offenses committed by its employees. It stresses that the violations in question involved the element of wilfulness, that the Price Control Act does not specifically provide that an employer shall be guilty of the employee's offense and that there was no evidence of participation in or knowledge by an officer or high ranking agent of the corporation.

All of the evidence as to the violations by the employees of appellant showed that the offenses were committed deliberately and with knowledge of the pertinent regulations prohibiting such tie-in sales. Appellant's proofs, as indicated, went to considerable lengths in establishing the care it took to familiarize its branch house people with those particular price regulations, among others.

Though the Price Control Act does not expressly state that a corporate employer shall be responsible for an offense under the statute by its employee[1] it is too late in the day to say that such offense, within the scope of the employee's authority, cannot be brought home to the corporation. United States v. Van Riper, 3 Cir., 154 F. 2d 492; In re Mifflin Chemical Corporation, 3 Cir., 123 F.2d 311, 315; Restatement, Agency, Section 165; ibid. Section 282, Comment (b). The Norristown manager, the Noble Street assistant manager, the various salesmen at the three branch houses, had all been entrusted with authority to act in connection with sales of appellant's products and there is evidence that while so functioning they violated the direct prohibition of the regulations respecting tie-in transactions. It appears that appellant's main office had repeatedly cautioned against such conduct, but this corporation, one extremely large in the vital food industry, cannot evade its responsibility by referring to its elaborate inter-branch correspondence and its instruction meetings. Seventeen violations of the tie-in sales prohibition in three out of a total of five branch houses in the Philadelphia area point to a condition prevailing of which it was the employer's duty to be aware. The checking and elimination of such obviously illegal practices is not shown to have been any more difficult than other details of a nation-wide industry. The employer "does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. *He must then stand or fall with those whom he*

---

[1] Regarding the necessity of express inclusion of corporate liability, Mr. Justice Frankfurter in United States v. Dotterweich, 320 U.S. 277, 282, 64 S.Ct. 134, 137, 88 L.Ed. 48, said, "By 1938, legal understanding and practice had rendered such statement of the obvious superfluous. Deletion of words—in the interest of brevity and good draftsmanship —superfluous for holding a corporation criminally liable can hardly be found ground for relieving from such liability the individual agents of the corporation." The Dotterweich action was for violation of Section 301 of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, 21 U.S. C.A. § 331. That statute defines "person" to include "corporation" (Section 201 (e), 21 U.S.C.A. § 321(e) exactly as does § 302(h) of the Emergency Price Control Act, 56 Stat. 37, § 302, Title 50 U.S.C.A. Appendix, § 942(h).

*selects to act for him.* He is in the same plight, if they are delinquent, as if he had failed to abate a nuisance on his land. \* \* \* *It is not an instance of respondeat superior. It is the case of the non-performance of a nondelegable duty."* (Emphasis ours). Chief Judge Cardozo for the Court in People v. Sheffield Farms-Slawson-Decker Co., 225 N.Y. 25, 121 N.E. 474, 476. "It is the function delegated to the corporate officer or agent which determines his power to engage the corporation in a criminal transaction." C.I.T. Corporation v. United States, 9 Cir., 150 F.2d 85, 89.[2] A branch manager was the individual employee involved in that case. In Zito et al. v. United States, 7 Cir., 64 F.2d 772, it was a salesman. We fail to see that the degree of importance in the appellant corporation of the present offending employee group helps appellant under the facts before us. Mostly, those employees were salesmen who violated the regulations in the course of their routine labors—the selling of appellant's products which was a vital part of the corporation's business.

The recent excellent opinion of Judge Clark for the Second Circuit Court of Appeals in United States v. George F. Fish, Inc., 154 F.2d 798, certiorari denied 328 U.S. 869, 66 S.Ct. 1377, 90 L.Ed. 1639, is most helpful in this connection. In that matter, almost identical with the instant situation and also involving a salesman as the active offender, Judge Clark after citing a long list of authorities substantiating the proposition that a corporation may be held criminally liable for the acts of an agent within the scope of his employment, says, 154 F.2d on page 801:

"No distinctions are made in these cases between officers and agents, or between persons holding positions involving varying degrees of responsibility. And this seems the only practical conclusion in any case, but particularly here, where the sales proscribed by the Act will almost invariably be performed by subordinate salesmen, rather than by corporate chiefs, and where the corporate hierarchy does not contemplate separate layers of official dignity, each with separate degrees of responsibility. The purpose of the Act is a deterrent one; and to deny the possibility of corporate responsibility for the acts of minor employees is to immunize the offender who really benefits, and open wide the door for evasion. Here Simon acted knowingly and deliberately and hence 'wilfully' within the meaning of the Act, Zimberg v. United States, 1 Cir., 142 F.2d 132, 137, 138, certiorari denied 323 U.S. 712, 65 S.Ct. 38 [89 L.Ed. 573] and his wilful act is also that of the corporation. United States v. Union Supply Co., 215 U.S. 50, 55, 30 S.Ct. 15, 54 L.Ed. 87; United States v. Illinois Cent. R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773."

The judgment of the District Court will be affirmed.

---

[2] Cf. Minisohn v. United States, 3 Cir., 101 F.2d 477. And see New York Central & H. R. R. Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; Egan v. United States, 8 Cir., 137 F.2d 369; Regan v. Kroger Grocery Co., 386 Ill. 284, 54 N.E.2d 210.

Appellant relies on some language of Judge Davis in Nobile v. United States, 3 Cir., 284 F. 253 regarding the criminal liability of a principal or master which, if that opinion is carefully read, develops to be simply dicta and not binding on us here. Holland Furnace Co. v. United States, 6 Cir., 158 F.2d 2, is also urged by appellant. That case had to do with the falsification of a certificate required by the War Production Board. The order of the War Production Board provided, as Judge Martin said in the opinion, 158 F.2d at page 3, "that anyone who reasonably relies on the truth of the certificate is not to be held responsible if it turns out to be false." The evidence was that the approval of the contract by the branch manager and the home office had been in reliance upon the said certificate and the case was decided as the court emphasized in its opinion, 158 F.2d at page 8, *"on the facts of this case."* (Emphasis ours). Those facts presented a far different corporate responsibility situation from the one with which we are concerned.