SINGER MANUFACTURING COMPANY, a New Jersey corporation, et al., Plaintiffs,

v.

SUN VACUUM STORES, INC., a New Jersey corporation, et al., Defendants.

Civ. A. No. 135–59.

United States District Court
D. New Jersey.

April 5, 1961.

Riker, Danzig, Marsh & Scherer, by Dickinson R. Debevoise, Newark, N. J., for plaintiffs. William J. O'Hearn, New York City, of counsel.

Mayer & Mayer, by Abraham I. Mayer, Newark, N. J., for defendants.

HARTSHORNE, District Judge.

In October, 1959, a consent decree was entered in this trademark infringement case. Subsequently plaintiff brought civil contempt proceedings against Sun (the corporation) and Lieberman and Cohen, corporate officers, as individuals. Plaintiff alleges that the defendants are in contempt of paragraph 5 of the decree, which reads as follows:

"5. Defendant corporation, its officers and directors, and the individual defendants, and the agents, employees, representatives, privies and confederates of, and all those in active concert or participating with, or holding by, through or under, any of the foregoing, and the successors of each and all of said defendants, be, and the same hereby are, permanently enjoined and restrained from using any of plaintiffs' marks or names in advertising products in newspapers, on radio or television or otherwise where the purpose thereof is not to make a bona fide offer to sell the products advertised under such marks or names, but the purpose is to sell or further the sale of other products. It shall be prima facie evidence that an offer to sell products advertised in association with plaintiffs' marks or names is not bona fide, and that the purpose is to further the sale of other products, that the advertiser follows any practice such as: (1) failing to show or demonstrate such a product; (2) showing, demonstrating or delivering such a product which is inferior to the product as advertised; (3) disparaging such a product, before or after the sale thereof, which, however, shall not include the making of a truthful statement as to the age of the product not inconsistent with any advertisement of such product by any defend-

ant; (4) refusing to sell such a product; (5) claiming undue delay in delivery of such a product; (6) failing to make reasonably prompt delivery of such a product for which an order has been taken; (7) claiming unavailability of replacement parts or repair service for such a product; or (8) misrepresenting any such product as to quality."

Thereupon a hearing was held lasting three days, evidence being offered by both sides. Plaintiff asks this Court to adjudge the corporate and individual defendants in contempt, to award reasonable counsel fees to plaintiff, to assess a fine equivalent to the profits unlawfully made by defendants, and to establish an in terrorem fine to prevent future violations of the decree.

The lengthy evidence presented reveals the following situation:

After the signing of the decree, defendants issued orders to their salesmen employees to abstain from violating the decree, including paragraph 5. However, certain salesmen, in response to inquiries from mail advertisements, paid visits to the homes of several employees of Singer Manufacturing Company. These advertisements told of various bargain prices for rebuilt Singer machines, and, while mentioning the Morse machine, clearly "played up" the Singer rebuilt machine and offered a home demonstration of the Singer. Defendants also advertised extensively in the newspapers to the same effect. The salesmen displayed the rebuilt Singer machines, but disparaged them as to their ability to perform. In the case of one Jackson, the salesman, after disparaging the Singer machine, went to his car and brought back a Morse machine and spoke highly thereof in an effort to sell it rather than the Singer and offered significant price concessions. When Jackson declined the offer of the Morse, the salesman, whose name is Mr. Lange, tried to sell the Universal machine at an even lower price. Again Jackson refused and finally purchased the reconditioned Singer at a cost of $19.90.

One Nardone, answering an ad in the newspaper, arranged for a salesman to display the rebuilt Singer. When Mr. Lange arrived, he did not have the Singer with him, saying that he only had vacuum cleaners to sell and that evidently there had been a mix-up. However, he did have a Morse machine in his car and proceeded to give a demonstration. Lange began to disparage the Singer and praise the Morse, stating, among other things, that Singer machines were not made in the United States. Later testimony of Mr. Kard refuted this.

On another occasion a Miss Froden answered a mail advertisement for a demonstration of the rebuilt Singer. The salesman began to disparage the competence of the Singer machine while demonstrating it. Miss Froden persisted in her desire to purchase the rebuilt Singer and gave the salesman a check for the machine. The salesman then demonstrated the Morse and praised it in an effort to persuade Miss Froden to change to the Morse. Subsequently he returned the check, saying he could not part with the Singer machine as it was his only demonstrator. He stated that the corporation would deliver another similar rebuilt Singer shortly thereafter and payment could be made then. The machine did not arrive as scheduled and Miss Froden telephoned Sun, and the promise was made that it would be delivered the following week. However, the machine was never delivered.

These were the three instances presented by plaintiff to pinpoint alleged violations of paragraph 5. The defendants offered no evidence contradicting these three instances. They did not offer testimony from their salesmen to rebut the plaintiff's witnesses. The main thrust of the defense was that the individual defendants, acting for the corporation, had ordered compliance with the decree and that the actions set forth above did not constitute a violation of paragraph 5 by virtue of a careful reading and interpretation thereof. With this contention the Court cannot agree. Both on the law and on a careful reading

of paragraph 5, this Court concludes that the corporate defendant must be held in contempt. The evidence, while indicating some activities which appear consistent with an effort to violate the decree, does not appear sufficient to warrant a finding of contempt as to Lieberman and Cohen. The fact that they did issue orders to their employees outweighs the rather sketchy evidence presented by the plaintiff in this regard. The evidence did indicate that Morse was involved with Sun in the advertising campaign, but the facts therein are not such as would warrant a finding of contempt as to Lieberman and Cohen. Holding someone in contempt of a Court's order calls for the exercise of careful discretion by the Court and that discretion should be based on clear and convincing evidence. See Fox v. Capital Co., 3 Cir., 1938, 96 F.2d 684; Bigelow v. RKO Radio Pictures, D.C.N.D.Ill.1948, 78 F.Supp. 250. As to the corporate defendant, the law is quite clear. A corporation is responsible for the acts of its employees and Judge McLaughlin, speaking for the Third Circuit, in the case of United States v. Armour & Co., 3 Cir., 1948, 168 F.2d 342, made it clear that the corporation was in criminal contempt resulting from the acts of its employees. Although the defendant corporation was much larger than Sun, the Third Circuit nevertheless held the corporation accountable. Certainly, if the corporation is accountable in criminal contempt, it would follow that its degree of responsibility for employee actions is no less severe in civil contempt proceedings. Other authorities are to the same effect. Gillette Safety Razor Co. v. Wolf, C.C.S.D.N.Y.1910, 180 F. 776; United States v. Van Riper, 3 Cir., 1946, 154 F.2d 492; Admiral Corporation v. Price Vacuum Stores, D.C.E.D.Pa.1956, 141 F.Supp. 796. Defendants cite the case of United States v. Taystee Baking Company, D.C.N.D.Tex.1944, 55 F.Supp. 490. That case is distinguishable since the United States there was seeking an injunction, not contempt for the violation of a prior injunction. However, in dictum the Court seemed to indicate that a corporation should not be held in contempt as a matter of discretion in seeking an equitable result where the corporation issues orders for compliance, but its employees violate such orders. The Third Circuit rule is not only controlling in this Court but appears to be a far wiser course. The orders of the Court must be obeyed, and to absolve a large or small corporate defendant from its responsibilities simply because the corporation has ordered compliance but has not sufficiently policed same, would be to open the door for wholesale disobedience of the Court. As reiterated by Judge McLaughlin at pages 343 and 344 of 168 F.2d, in quoting Judge Cardozo:

"The employer 'does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. He must then stand or fall with those whom he selects to act for him. He is in the same plight, if they are delinquent, as if he had failed to abate a nuisance on his land. * * * It is not an instance of respondeat superior. It is a case of the non-performance of a nondelegable duty.'"

Although the salesmen may have been acting on their own in violating the decree, the corporation certainly was reaping the benefits therefrom. Thus this argument of the defendants cannot stand. Good intentions of the corporation do not absolve violations of a decree. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599; Babee-Tenda Corporation v. Sharco Manufacturing Company, D.C.S.D.N.Y.1957, 156 F.Supp. 582.

Defendants' further argument is that on the facts as set forth by the witnesses the decree itself has not been violated. They raise three points to support this contention. First, they point to the words in paragraph 5, " * * * where the purpose thereof * * * but the purpose is * * *." Defendants' position is that the words "the purpose" mean sole purpose, and that if it was only one of the purposes of the defend-

ants to try and sell the Morse rather than the Singer by advertising Singer in a lucrative fashion, the decree was not violated. Secondly, defendants point to the words in paragraph 5, " * * * that the advertiser follows any practice, such as: * * * " and thus three isolated instances raised by plaintiff do not constitute a practice of doing the forbidden acts and the decree has not been violated. Defendants' third argument is that prior to the reaching of a final accord on the wording of the consent decree, prior proposed decrees were rejected by the defendants as being too broad. Thus the defendants say that, in order to arrive at the correct interpretation of paragraph 5, the present decree should be read in conjunction with the wording of the prior decrees which were not accepted.

■■ The first two arguments noted above can be disposed of together. To reach the conclusion of defendants would require a tortured interpretation of paragraph 5. The paragraph should be read as a whole and the meaning derived from such a complete reading. When viewed in this context it is quite clear that any attempts to use the Singer name to lure prospective customers for the sale of Morse machines is a violation of paragraph 5. The frequency of such violations is not material. The three isolated instances raised by plaintiff are not necessarily the only violations committed by the defendants, and in fact it is highly unlikely that they were the exception rather than the rule. In order to prove a violation of a court decree of this type, one need not prove a massive assault on the decree by the defendant. The examples proved by plaintiff satisfactorily show that the defendant corporation flouted the edict of paragraph 5. Within paragraph 5 are eight examples of what would constitute prima facie violations of that paragraph. According to defendant's argument, defendant could have violated, one at a time, all eight of the kinds of examples referred to by the consent decree, yet not have violated this decree at all. Such a result would make the decree almost meaningless. The picture painted by the evidence indicates a violation regardless of the eight examples. However, several of those examples were in fact actual happenstances, as indicated by the testimony. Examples 3, 6 and 8 were borne out by the evidence.

■ The third point raised by the defendants has no merit. Paragraph 5 is clear and unambiguous in its content and portent. The eight examples listed therein further clarify the meaning and purpose of the injunction and do not leave it in ambiguity. Thus it would be entirely improper to interpret that paragraph by reference to prior writings which were debated back and forth, but were abandoned and not made part of the decree. This Court is called upon to determine whether a contempt of *this* decree has occurred and *this* decree is quite clear and capable of adherence thereto by defendants and interpretation by the Court without regard to prior discussions.

■ Having found defendant corporation in civil contempt, this Court will award reasonable costs and counsel fees to plaintiff for the prosecution of this contempt proceeding. The amount will not necessarily be based on the actual fees and costs but on what the Court determines to be reasonable under the circumstances. Sunbeam Corporation v. Golden Rule Appliance Co., 2 Cir., 1958, 252 F.2d 467. Counsel for plaintiff should submit an affidavit listing the fees and costs as an aid to the Court in reaching its determination.

■ Plaintiff also seeks to impose a fine on the defendant in the amount of the profits unfairly gained by the defendant. The Third Circuit, in National Drying Machinery Co. v. Ackoff, 1957, 245 F.2d 192, certiorari denied 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44, has made it clear that such fines are not proper in contempt proceedings without proof of actual injury to plaintiff resulting from the contempt. No such proof has been made here and thus this Court will not impose any fine of this nature.

 Finally, plaintiff seeks the imposition of an in terrorem fine, whose purpose is to put defendant on notice of what will be assessed against them for each and every future contempt of this decree. Primarily it is used as a deterrent. In deciding the amount of such a fine, the Court would appear to have to take into consideration the financial position of the defendant and the nature of the acts involved. In United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, the Supreme Court set a figure to prevent continuation of an illegal strike and based the amount thereof on the financial position of the Union. Judge Learned Hand, in *Sunbeam*, supra, approved the use of an in terrorem fine in a case similar to the one at bar. In the *Ackoff* case the Third Circuit did not mention the use of an in terrorem fine, presumably because it was never dealt with by the Court below. However, in view of the holding in *Ackoff*, which in effect limits a complainant to counsel fees for civil contempt by the defendant, it would appear that the use of an in terrorem fine would be justified to add to the slight deterrent effect that results from merely awarding counsel fees. Further, it would alleviate the fears of Chief Judge Biggs in the dissent in the rehearing in *Ackoff*, wherein he said:

"At most the injured party can recover attorney's fees and costs in a useless action in which he can receive no compensation whatsoever for the injury he has suffered." 245 F.2d at page 196.

See also General Electric Company v. Waldman, D.C.W.D.Pa.1958, 159 F. Supp. 576, at page 581.

But the Court at present does not have sufficient information to set the amount of the in terrorem fine which it intends to impose. It therefore requires both sides to submit their thoughts as to this amount when they appear for the entry of an order in conformity with this opinion.

 Since no punitive fine has been or could be levied on defendant, any hearing in mitigation (as requested by defendant) would be meaningless. Furthermore, it is highly unlikely that such a hearing would be proper in civil contempt proceedings. *McComb*, supra; *Babee-Tenda*, supra.

It might be well to note also at this time that in reaching the conclusions of fact herein the Court took into consideration that the primary witnesses for the plaintiff, who sought to purchase the Singer rebuilt machine, were actually employees of Singer.

 The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and the conclusions of law required by F.R.Civ.P. 52, 28 U.S.C.A.

Settle order on notice.