**FARGO WOMEN'S HEALTH ORGA-NIZATION, INC., Robert Lucy, M.D., George Miks, M.D., & Jane Doe, Plaintiffs and Appellees,**

v.

**Patricia LARSON, Darrold Larson, David Pence, Terri Carlson, John Robertson, Robyn Robertson, Loralee Isaacson, directors of the FM Women's Help and Caring Connection d/b/a Women's Help Clinic, Defendants and Appellants.**

**Civ. No. 11058.**

Supreme Court of North Dakota.

July 23, 1986.

William Kirschner, Fargo, for plaintiffs and appellees.

Jean Samelson, Fargo and Michael P. Farris, Gen. Legal Counsel and Jordan W. Lorence, Staff Atty., argued, Concerned Women for America Educ. and Legal Defense Foundation, Washington, D.C., for defendants and appellants.

GIERKE, Justice.

The FM Women's Help and Caring Connection, Incorporated, d/b/a Women's Help Clinic and its directors, Patricia Larson, Darrold Larson, David Pence, Terri Carlson, John Robertson, Robyn Robertson, and Loralee Isaacson, (hereinafter collectively referred to as the Help Clinic unless

the context requires otherwise) appeal from a district court order finding the Help Clinic and the individual directors in contempt of court for violating a preliminary injunction enjoining false and deceptive advertising and related activities. We affirm in part and reverse in part.

Fargo Women's Health Organization, Inc. (Women's Health) operates a medical clinic which performs abortions in Fargo. The Help Clinic, also operating in Fargo, provides pregnancy tests and anti-abortion counseling services but does not perform abortions. In January 1985, Women's Health filed an action against the Help Clinic alleging that the Help Clinic used false and deceptive advertising and solicitation practices to mislead persons seeking abortions into believing that it performed abortions. Upon filing the action, Women's Health requested the trial court to enter a preliminary injunction to enjoin the allegedly deceptive advertising and solicitation practices by the Help Clinic while the action was pending. The district court issued an oral order granting the preliminary injunction on February 22, 1985, and a written order was entered on March 1, 1985, which provided in relevant part:

"THEREFORE IT IS ORDERED,

\* \* \* \* \* \*

"... [T]hat the defendant be enjoined from using the name Women's Help Clinic, or comparable words which are similar, and confusing....

"... [T]hat the defendants individually and collectively, jointly and severally, shall be prohibited from falsely and deceptively advertising that they provide elective abortions and financial assistance for such services.

"... [T]hat the defendants do not falsely lull people that come to them for counseling into thinking that they are, in fact, the Women's Health Organization or the Fargo Women's Health Organization, Inc. and that the defendants take no action or inaction which would lull people into believing that they are dealing with

the Fargo Women's Health Organization, Inc. when they are in fact dealing with defendants or F–M Women's Help and Caring Connection, Inc....

"... [T]hat if the defendants advertise using the term abortion, then they must state that they do not perform abortions."

In *Fargo Women's Health Organization, Inc. v. Larson*, 381 N.W.2d 176 (N.D. 1986) *[Fargo Women's Health I]*, cert. denied, —— U.S. ——, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986), we modified the preliminary injunction by striking the provision that if the defendants advertise using the term abortion, they must state that they do not perform abortions, and, as modified, we affirmed the preliminary injunction. We further concluded that the preliminary injunction did not unconstitutionally infringe upon the Help Clinic's First Amendment rights.

While that appeal was pending in this court, Women's Health made a motion in district court seeking an order finding Darrold Larson, Patricia Larson, and the Help Clinic in contempt of court for alleged violations of the preliminary injunction. After an evidentiary hearing, the district court found the Help Clinic in civil contempt of court and entered an order requiring that the corporation pay $500 to Women's Health as a partial cost of attorney's fees for prosecuting the contempt proceeding and that Patricia Larson, Darrold Larson, David Pence, Terri Carlson, John Robertson, Robyn Robertson, and Loralee Isaacson be committed to 30 days in jail unless they purged themselves immediately by complying with the preliminary injunction. The Help Clinic appealed.[1]

The Help Clinic contends that the trial court erred in admitting tapes and transcripts of five telephone conversations into evidence. In March 1985, Women's Health employed a private investigator, Darrell Graf, to solicit individuals to call the Help Clinic to ascertain whether it was comply-

---

1. The contempt order was stayed pending the appeal from the preliminary injunction. In *Fargo Women's Health Organization, Inc. v. Larson, supra,* we lifted the stay.

ing with the preliminary injunction, and he recorded those individuals' telephone conversations with Loralee Isaacson and Darrold and Patricia Larson. Graf was referred to Women's Health by its attorney, William Kirschner. Graf had done some work for Kirschner and shared office space in the same building; however, Graf testified that his actual employer was Buffalo City Security in Jamestown. The Help Clinic contends that the tapes and transcripts may have been obtained in violation of Disciplinary Rule 7–104(A)(1), North Dakota Code of Professional Responsibility [2] and that the trial court erred in refusing to allow Kirschner to testify concerning his contact with Graf because the evidence strongly indicated that Kirschner had caused another to communicate with an adverse party on the subject of the representation. Therefore, the Help Clinic asserts that the tapes and transcripts should not have been allowed into evidence.

■ Generally, a trial court has wide discretion regarding the examination of witnesses, and, under appropriate circumstances, a court may refuse to allow a witness to testify. *Gajewski v. United States,* 321 F.2d 261 (8th Cir.1963) *cert. denied,* 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). Courts are reluctant to allow attorneys to be called as witnesses in cases in which they are advocates, and a court may, without abusing its discretion, refuse to allow the defense to call the plaintiff's attorney as a witness. *Gajewski v. United States, supra.* Our review of such a refusal is whether or not the trial court abused its discretion. *Gajewski v. United States, supra.*

■ The testimony of Jane Bovard, administrator at Women's Health; Susan Hill, vice-president of Women's Health; and Graf unequivocally established that

Graf was contacted, hired, and paid directly by Women's Health without any participation, other than referral, by Kirschner. Because of this unequivocal testimony, we do not believe the trial court abused its discretion in denying the Help Clinic's request to call Kirschner as a witness. Additionally, we do not believe there is any factual basis to support the Help Clinic's assertion that counsel for Women's Health caused another to communicate with an adverse party on the subject of the representation.[3]

Furthermore, the Help Clinic's reliance on *Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985), is misplaced. In *Kleiner, supra,* the court issued a protective order prohibiting the defendant from contacting prospective plaintiffs in a class action against it. Thereafter, the defendant's attorney researched and provided legal advice to the defendant on the legality of a solicitation campaign to exclude potential plaintiffs in the class action and was in "close consultation" during the solicitation campaign. In *Kleiner, supra,* the court fined the attorney and disqualified him from representing the defendant. However, *Kleiner, supra,* did not involve the suppression of evidence, and the attorney's conduct involved much more than a referral of a private investigator and is distinguishable from the instant case.

■ The Help Clinic also contends that the tapes and transcripts should not have been allowed into evidence because they were obtained in violation of Section 12.1–15–02(1), N.D.C.C. Women's Health counters that the tapes were obtained legally pursuant to Section 12.1–15–02(3)(c), N.D.C.C.

Section 12.1–15–02, N.D.C.C., provides, in relevant part:

**2.** Disciplinary Rule 7–104(A)(1), N.D.C.P.R., provides:

"(A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior

consent of the lawyer representing such other party or is authorized by law to do so."

**3.** We express no opinion on the Help Clinic's argument that a violation of the disciplinary rules requires that evidence obtained as a result of that violation be suppressed.

"1. A person is guilty of a class C felony if he:

a. Intentionally intercepts any wire or oral communication by use of any electronic, mechanical, or other device; or

b. Intentionally discloses to any other person or intentionally uses the contents of any wire or oral communication, knowing that the information was obtained through the interception of a wire or oral communication.

\*   \*   \*   \*   \*   \*

"3. It is a defense to a prosecution under subsection 1 that:

\*   \*   \*   \*   \*   \*

"c. (1) The actor was a party to the communication or one of the parties to the communication had given prior consent to such interception, and (2) such communication was not intercepted for the purpose of committing a crime or other unlawful harm."

Section 12.1–15–02, N.D.C.C., is derived from the proposed Federal Criminal Code and, as relevant to this case, is identical to Section 1561 of the Final Report of the National Commission of Reform of Federal Criminal Laws. The Final Report, submitted to Congress on January 7, 1971, states that the defenses in Section 1561 corresponded to the defenses provided by the law in effect at that time. As relevant to this case, those defenses have not been changed since that time and are currently found in 18 U.S.C. § 2511(2)(d).[4] Pursuant to that statute, the federal courts have consistently permitted the recording of telephone conversations when one of the parties to the conversation consents. *See United States v. Bragan*, 499 F.2d 1376 (4th Cir.1974); *United States v. Puchi*, 441 F.2d 697 (9th Cir.1971), *cert. denied*, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1972); *see also United States v. White*, 401 U.S.

745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), *reh'g denied*, 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971).

In the instant case, the individuals solicited by Graf to telephone the Help Clinic knew they were being recorded and consented to the recording. That consent is sufficient to implement Section 12.1–05–02(3)(c), N.D.C.C.

■ The Help Clinic also contends that affidavits of Graf and Sue Charon should not have been admitted into evidence because the notary was not present when the affiants signed the affidavits, and therefore, the affidavits were not taken under oath before an authorized officer. In particular, the Help Clinic contends that two affidavits of Graf show indications of improper notarization.

Graf testified at the contempt hearing as follows:

"Q. Was Mr. Kirschner present when you signed the first one which is dated March 27th, 1985?

"A. I don't recall. I believe he was there when one of them was signed. In fact, I'm sure he was there when I signed one of them.

"Q. But on the other, you don't think he was there?

"A. I don't—

"MR. KIRSCHNER: Your Honor, perhaps if the witness was shown the affidavit.

"MR. FARRIS: I don't want to show him. The reason I did want that brought up is because Mr. Kirschner did notarize it and if he wasn't present when he signed it, these affidavits should be stricken.

"MR. KIRSCHNER: I think in fairness you should be able to—the witness should have the affidavit in his hands if he's going to testify from it.

**4.** 18 U.S.C. § 2511(2)(d) provides:
"It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act."

"MR. FARRIS: I'm asking him to testify concerning the circumstances surrounding it. It's highly prejudicial. The point I was trying to establish is that it's a false notarization in that he indicated he didn't know if Mr. Kirschner was present.

"THE COURT: You made your point, proceed to your next question.

"MR. FARRIS: I'd ask for a mistrial. I ask this entire proceeding be stricken or at least Mr. Graf's affidavit be stricken as a result of this failure to remember whether or not Mr. Kirschner was present. He doesn't know which one he was at. And since an adverse inference here that Mr. Kirschner was not present and there's been a false notarization, I ask that the affidavits be stricken.

"THE COURT: Your motion is denied. Your mistrial motion is denied. Proceed with your next question."

The matter was not pursued any further, and we do not believe this testimony establishes that Graf's affidavits were improperly notarized because the record does not establish which, if any, of Graf's affidavits were not signed before a notary. We conclude that the Help Clinic's assertion that Graf's affidavits were improperly notarized is not supported by the record.

At the contempt hearing, Sue Charon testified as follows:

"Q. Ms. Charon, was Mr. Kirschner present when you signed your affidavit?

"A. He was not.

"MR. FARRIS: I ask her affidavit be stricken for false notarization, Your Honor.

"THE COURT: What affidavit is that now?

"MR. FARRIS: Your Honor, dated August 9th.

"MR. KIRSCHNER: Your Honor, if I might, a question to clarify this matter?

"CROSS EXAMINATION BY MR. KIRSCHNER:

"Q. Did we have a telephone discussion concerning your affidavit?

"A. Yes, we did.

"Q. Did we discuss after your affidavit was signed whether or not it was true and correct?

"A. Yes, we did.

"Q. Did you swear to me over the telephone it was true and correct?

"A. Yes, I did.

"MR. KIRSCHNER: Your Honor, I wasn't in the office when she came in. But I did notarize it on the basis she did tell me that over the telephone.

"THE COURT: All right, I have the affidavit dated August 9th, 1985. Your position is this should be stricken because she was not before the notary at the time?

"MR. FARRIS: That is what it says, Your Honor, subscribed and sworn to before me this 9th day of August. That means Mr. Kirschner watched her write it. That is what the word subscribed means.

"THE COURT: What is your position?

"MR. KIRSCHNER: Your Honor, the matter was signed in front of somebody in my office who did see the signature. And she did swear to it over the telephone that it was her signature.

"THE COURT: Is anything in that affidavit, Ms. Charon, is there anything untruthful in it?

"MS. CHARON: No, there's not."

■ Charon stated in her affidavit that she saw a Help Clinic advertisement in a Fargo newspaper and that advertisement used the word "abortion" and did not specifically state that the Help Clinic did not perform abortions. A copy of the advertisement had already been admitted into evidence. The Help Clinic does not contest the content of Charon's affidavit, and she was present at the contempt hearing for cross-examination. We conclude that error, if any, in allowing the affidavit into evidence was not prejudicial.

The Help Clinic contends that the trial court improperly drew an adverse inference of contempt from Darrold and Patricia Larson's invocation of the Fifth Amendment privilege against self-incrimination. The

Larsons refused to answer questions concerning their participation in the placement of an advertisement using the word "abortion" in the Midweek Eagle. *See* fn. 6, infra. However, the trial court did not rely on an adverse inference to find that the Help Clinic had participated in placing the advertisement.[5] Consequently, we need not address this issue.

The Help Clinic also contends that the evidence was not sufficient to establish that all the defendants willfully and inexcusably violated the preliminary injunction. The district court found the Help Clinic in civil contempt of court in the following respects:

"1. The Defendants have used the title Womens Help Clinic.

"2. The Defendants have made untrue, deceptive, and misleading advertising which was known to the Defendants to be untrue, deceptive, and misleading.

"3. The Defendants have falsely lulled people that came to them for counseling into thinking that they are in fact the Fargo Women's Health Organization, Inc., or that the Defendants perform abortions.

"4. That the Defendants in their advertisements and contacts have failed affirmatively to state that they do not perform abortions."

■ A person must willfully and inexcusably violate a court order to be found in civil contempt of court. *Bergstrom v. Bergstrom,* 320 N.W.2d 119 (N.D.1982); *Raszler v. Raszler,* 80 N.W.2d 535 (N.D. 1956). Contempt of court must be established by clear and satisfactory evidence. *Buchmann v. Buchmann,* 202 N.W.2d 677 (N.D.1972); *Raszler v. Raszler, supra.* Whether or not a contempt has been committed is within the sound discretion of the trial court and its decision will not be disturbed on appeal unless there has been

abuse of discretion. *Bergstrom v. Bergstrom, supra.* We have defined an abuse of discretion as an unreasonable, arbitrary, or unconscionable attitude by the trial court. *Kraft v. Kraft,* 366 N.W.2d 450 (N.D.1985).

■ Generally, a corporation is responsible for the acts of its employees if done on its behalf and within the scope of the employee's authority. *See, e.g., United States v. Demauro,* 581 F.2d 50 (2d Cir. 1978); *United States v. Armour & Co.,* 168 F.2d 342 (3d Cir.1948). A corporation may be found in contempt of court for the acts of its agents. *United States v. Armour & Co., supra; United States v. George F. Fish, Inc.,* 154 F.2d 798 (2d Cir.1946), *cert. denied,* 328 U.S. 869, 66 S.Ct. 1377, 90 L.Ed. 1639 (1946); *Blangy v. State,* 481 So.2d 940 (Fla.Dist.Ct.App.1985). It is also well established that an officer or agent of a corporation may be found in contempt of court if that officer or agent was responsible for the acts or inaction of the corporation that constituted the contempt. *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *N.L.R.B. v. Maine Caterers, Inc.,* 732 F.2d 689 (1st Cir.1984); *Milano v. Hingham Sportswear Co., Inc.,* 366 Mass. 376, 318 N.E.2d 827 (1974); *Dep't. of Revenue v. Carpet Warehouse, Inc.,* 296 Or. 400, 676 P.2d 299 (1984); *Sound Storm Enterprises, Inc. v. Keefe,* 209 N.W.2d 560 (Iowa 1973); *See* 17 Am.Jur.2d *Contempt* § 12 (1964). However, in order to hold an officer or agent of a corporation in contempt, that individual's participation in the act or inaction must be established. *See Singer Manufacturing Co. v. Sun Vacuum Stores, Inc.,* 192 F.Supp. 738 (D.N.J.1961); *Sound Storm Enterprises, Inc. v. Keefe, supra.*

■ In the instant case, the evidence presented at the contempt hearing consist-

---

5. The trial court's findings of fact provide:

"In that North Dakota, as far as known to this Court, has not yet ruled on this legal concept, this Court finds that the Defendants violated the Preliminary Injunction without the need for evidence of Defendants' participation through the use of 'adverse inference.'

The telephone number itself established the advertisement to be that of the Defendant corporation. The Defendants did not introduce any evidence that they disclaimed the advertisement after proof that they knew about the advertisement."

ed of two newspaper advertisements;[6] the tapes and transcripts of the five telephone conversations; the testimony of Suzy Roe, an individual who had contacted the Help Clinic seeking an abortion; and the minutes of a meeting of the Fargo Planning Commission which stated that Darrold Larson had referred to the Clinic as the "Women's Help Clinic."

No evidence was presented to implicate David Pence, Terri Carlson, John Robertson, or Robyn Robertson as being responsible in any way for any of the actions of the corporate entity, and there was no evidence of knowledge, ratification, consent or participation on the part of those individuals in the acts of the corporation. Consequently, we believe the order for contempt must be reversed as to those directors.

As to the remaining directors and the corporation,[7] we believe that the tenor of the advertisements, the taped telephone conversations involving those directors, and their counseling of Suzy Roe established that the Help Clinic led others to believe that it, or its affiliate, performed abortions and provided financial assistance for abortions. The Help Clinic's conduct must be judged in light of the fact that it was ordered not to mislead potential clients or deceptively advertise. Although isolat-

ed segments of the taped telephone conversations may support the Help Clinic's assertion that it attempted to comply with the court order, we believe the conversations, as a whole, established a violation of the preliminary injunction. Additionally, the testimony of Suzy Roe directly supports the trial court's findings that the Help Clinic violated the preliminary injunction. We also believe that a reasonable interpretation of the newspaper advertisements support the trial court's findings. We do recognize that Darrold Larson's statements at the Fargo Planning Commission meeting, standing alone, may not support a willful and inexcusable violation of the court order. However, after a careful review of all the evidence presented at the contempt hearing and giving appropriate deference to the trial court's findings, we believe that the evidence, as a whole, established that the Help Clinic and directors Darrold Larson, Patricia Larson and Loralee Isaacson willfully and inexcusably violated the preliminary injunction. Accordingly, we conclude that the trial court did not abuse its discretion in finding Loralee Isaacson, Darrold and Patricia Larson, and the corporate entity in contempt of court for violation of the preliminary injunction.[8]

---

**6.** The advertisement in the Midweek Eagle provided:

> "CONTEMPLATING ABORTION? Need questions answered? No matter what your decision, we can help. Free Pregnancy tests. Referrals. Licensed physicians. Financial assistance. 232–2716."

The advertisement in the Forum provided:

> "PREGNANT
> AND DON'T
> WANT TO BE?
> A women's clinic —
> women helping women
> 232–2716
> Answered 24 hours
> CLIP THIS AD for a
> FREE Pregnancy Test
> *Confidential
> *Financial Assistance
> *Services performed by
> licensed physicians
> Call Toll Free:
> ND 1–800–732–2422
> MN SD 1–800–362–3145
> FM Women's Help and
> Caring Connection, Inc.
> Pro-Life"

**7.** The Help Clinic also asserts that the corporation was not a party to the lawsuit. However, it is apparent that the trial court granted Women's Health's oral motion to amend the pleadings to include the corporation because the trial court entered a preliminary injunction enjoining the conduct of both the corporation and the directors.

**8.** We recognize that in the previous appeal we struck a portion of the preliminary injunction. *See Fargo Women's Health Organization, Inc. v. Larson, supra,* 381 N.W.2d at 179–180. However, it is well settled that where a court has jurisdiction but has issued an erroneous order, the party to whom the order was issued must obey it as long as it remains in force or until it is reversed on appeal, and the failure to obey such an order is punishable as contempt of court. *Hodous v. Hodous,* 76 N.D. 392, 36 N.W.2d 554 (1949); *see also Kleiner v. First National Bank of Atlanta, supra.*

■ The Help Clinic also contends that the trial court improperly extended the preliminary injunction when it stated:

"I am going to also require that they affirmatively state at the onset, we do not perform abortions with anybody having contact with them, that they only have counseling. They will not use the concept of services performed by licensed doctors because that is not true other than for the test. If they are going to say that, they should say the tests are given by licensed doctors."

Because of the nature of conduct involved in the telephone conversations in this case, we believe the additional requirement imposed by the trial court was appropriate to avoid any confusion for those dealing with the Help Clinic. We limit this additional requirement, however, to those instances wherein the Help Clinic is contacted, either personally or by phone, and adhere to our ruling in *Fargo Women's Health I* with regard to written advertisements.

■ The Help Clinic also contends that the requirement that the corporation pay $500 to Women's Health as a partial cost of attorney's fees for prosecuting the contempt proceeding should be stricken because the trial court did not have the authority to order the payment of money in a civil contempt proceeding without giving the corporation the opportunity to purge itself of contempt.

Section 27–10–05, N.D.C.C., provides that a corporation may be fined for civil contempt in the manner prescribed in Section 27–10–04, N.D.C.C., which, in turn, provides:

"*27–10–04. Penalty for civil contempt—When party injured indemnified instead of fine being imposed.* —Any person guilty of a civil contempt punishable by a court of record of this state may be punished by a fine of not more than two hundred fifty dollars over and above the costs and expenses of the proceedings therein, or by imprisonment

in the county jail for a reasonable time, not exceeding six months, and until the fine, if any, is paid, or by both such fine and imprisonment. However, if:

1. An actual loss or injury has been produced to any party by the misconduct of such person, the court or judge, instead of imposing a fine upon him, shall order him to pay a sufficient sum to indemnify such party, and to satisfy the costs and expenses of such party, and in such case the payment and acceptance of such sum shall be an absolute bar to any action by the aggrieved party to recover damages for such loss or injury; ..."

These sections do not require that a corporation be given the opportunity to purge itself of contempt by paying that money. Such costs and expenses or the actual loss or injury are incurred whether or not the corporation purges itself of contempt and must still be paid. We conclude that the trial court did not err in ordering the Help Clinic to pay $500 without giving it the opportunity to purge itself of contempt.

The district court order finding Loralee Isaacson, Darrold and Patricia Larson, and the corporate entity in contempt of court is affirmed, and the order finding the remaining directors in contempt of court is reversed.

MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I disagree with that portion of the majority opinion which concludes that "a reasonable interpretation of the newspaper advertisements supports the trial court's findings" that the Help Clinic violated the preliminary injunction. Insofar as the advertisement in the Fargo Forum quoted at footnote 6 of the majority opinion is concerned, the conclusion of the majority may lead one to believe that if a woman is pregnant and doesn't want to be, the only

alternative is an abortion. I reject that implication. Furthermore, that advertisement contains at the bottom the words "Pro-Life." Even the most uninterested are by now aware that this labels a person or organization as anti-abortion. A "reasonable" interpretation of this particular advertisement would be that the group did not perform abortions.

Furthermore, it is difficult to determine how much of the trial judge's conclusion was based on the failure of the Help Clinic to include in their advertisements using the term "abortion," a statement that the Clinic does not perform abortions, which requirement this court struck from the preliminary injunction in *Fargo Women's Health Organization v. Larson*, 381 N.W.2d 176 (N.D.1986). Insofar as the trial judge's perspective of the advertisements as being false and deceptive and in violation of the preliminary injunction may be based on that failure, we should not affirm as "reasonable" the trial court's interpretation of the newspaper advertisements.

I also am concerned with the implications of footnote 8 in the majority opinion. Although the Help Clinic's advertisements are considered "commercial" speech and therefore not entitled to the "full panoply of protection under the First Amendment as do other forms of protected speech" [*Fargo Women's Health Organization v. Larson, supra*, at page 180], they are nevertheless entitled to First Amendment protection. However, the United States Supreme Court appears to hold that while one is free to violate an unconstitutional statute restricting free speech, one is not free to violate the same words when written as a court injunction. See Rotunda, Nowak & Young, *Treatise on Constitutional Law: Substance and Procedure*, Sec. 20.16; *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Walker v. Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

I must, however, agree with the majority that the taped telephone conversations would lead others to believe that the Women's Help Clinic performed abortions or provided financial assistance for abortions. Regardless of how reprehensible the defendants find abortion, the use of "tricks" or fraud and intentionally misleading statements cannot be justified in the campaign to oppose abortion. Insofar as there is sufficient evidence in the taped conversations to prove that, when considered in light of the preliminary injunction, the responses to questions were purposely vague and misleading, I agree with the result reached in the majority opinion.

ERICKSTAD, C.J., concurs.